988 F.2d 1008
 119 A.L.R.Fed. 813
 UNITED STATES of America, Plaintiff-Appellee,
v.
Oliver Alvin TRIGG, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Edward COTTLE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Edward COTTLE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oliver Alvin TRIGG, Defendant-Appellant.
 Nos. 91-50034, 91-50068, 91-50245, 91-50264.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 2, 1992.
Decided March 24, 1993.
As Amended June 21, 1993.
 
 Donald C. Randolph, Randolph & Levanas, Santa Monica, CA, for defendant-appellant Trigg.
 Peter Robinson, Santa Rosa, CA, for defendant-appellant Cottle.
 Maurice A. Leiter, Sp. Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: WALLACE, Chief Judge, TROTT and T.G. NELSON, Circuit Judges.
 WALLACE, Chief Judge:
 
 
 1
 Following their convictions for conspiracy, in violation of 18 U.S.C. § 371, and making false statements to an agency of the United States, in violation of 18 U.S.C. § 1001, Trigg (who was also convicted of bank fraud, money laundering, and subscribing to a false tax return) and Cottle appeal from the district court's denial of their motions to dismiss on double jeopardy grounds. The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 2
 * Trigg took over Family Savings and Loan (Family) by using Family's own assets to finance the acquisition. Cottle assisted Trigg in defrauding the Federal Home Loan Bank Board (Board) as part of the scheme. A Los Angeles Times article prompted an investigation by the Board, which led to the indictment and arrest of Trigg and Cottle.
 
 
 3
 Jury selection initially proceeded unremarkably, and a jury of twelve, with no alternates, was impaneled and sworn. After the jury had been excused until further call, however, the district judge informed counsel that he intended to dismiss three jurors because of unavailability. The judge stated that juror unavailability prompted his decision to dismiss the jurors. No alternate jurors had yet been selected. The judge informed counsel that they would be allotted additional peremptory challenges, three to Trigg and Cottle, two to the government, to exercise during the process of selecting replacements for the three jurors to be dismissed. Cottle's counsel objected on double jeopardy grounds. The district judge responded that because the first witness had not been called, Cottle had not yet been placed in jeopardy.
 
 
 4
 A new venire panel was assembled, and voir dire began for the selection of three jurors to replace the ones whom the judge intended to discharge. Three panel members were called from the venire panel and questioned, although none were sworn as jurors. Then the original jury returned. At that time, the district judge dismissed one of the three prospective replacement jurors because of unavailability, along with the three original jurors the judge had indicated he would excuse. Then another prospective juror was called and questioned. Trigg's counsel exercised a peremptory to excuse one of the replacement jurors, and another prospective juror was called from the venire panel. Neither side exercised any more peremptories. Two alternates were then chosen and accepted, and the entire jury was sworn, after which the jury was excused. Cottle's counsel then moved to dismiss for double jeopardy, which was subsequently joined by Trigg. The district court denied this motion.
 
 II
 
 5
 Trigg and Cottle challenge the district court's denial of their motions to dismiss for double jeopardy. Whether the district court erred in denying the motions to dismiss the indictments on double jeopardy grounds presents a constitutional question which we review de novo. United States v. Bates, 917 F.2d 388, 392 (9th Cir.1991).
 
 
 6
 Trigg and Cottle argue that because jeopardy attached when the jury first was sworn, the subsequent dismissal, replacement, and reswearing of jurors placed them twice in jeopardy. At the heart of Trigg and Cottle's argument is the theory that the district court's dismissal of jurors from a sworn jury constituted a mistrial, and the subsequent swearing of a new jury placed them in double jeopardy.
 
 
 7
 Although Trigg and Cottle are correct that jeopardy attached at the time the jury first was sworn, Richardson v. United States, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984), the Supreme Court has stated unequivocally "that the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." Id., citing Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 308-10, 104 S.Ct. 1805, 1813-14, 80 L.Ed.2d 311 (1984). In Richardson, the Court held that a district court's declaration of a mistrial as a result of a hung jury is not an "event, such as an acquittal, which terminates the original jeopardy." Id. In this case, as in Richardson, "[s]ince jeopardy attached here when the jury was sworn, [Trigg and Cottle's] argument necessarily assumes that [the discharge of the three jurors] was an event which terminated jeopardy in [their] case and which allowed [them] to assert a valid claim of double jeopardy" upon the reconstitution of a twelve member jury. Id. (citation omitted). The district judge's jury selection process in this case, although irregular, did not result in an event which terminated the original jeopardy of Trigg and Cottle.
 
 
 8
 We were presented with a similar, although not identical, situation in United States v. Echavarria-Olarte, 904 F.2d 1391 (9th Cir.1990) (Echavarria ). There, we approved the district court's selection of alternates after the jury had been sworn, and after the district court had decided to discharge one of the original jurors. Id. at 1394-95. The district court in Echavarria, however, was careful not to excuse the juror until after the alternates had been selected. Id. at 1395. We concluded that the procedure used in Echavarria is "allowable" under Federal Rule of Criminal Procedure 24(c). Id. It is clear from the record in this case that although the district court had determined to discharge three jurors shortly after the jury was sworn, the court did not discharge the jurors until after voir dire had begun for the selection of replacements and three initial prospects had been called. Thus, the only material difference between this case and Echavarria is that while the district judge in that case selected alternates prior to excusing the juror, the district judge in this case discharged the original jurors while the selection of alternates was still proceeding.
 
 
 9
 The issue, then, is whether the reach of the Fifth Amendment's Double Jeopardy Clause turns on this difference in the exact timing of the district court's discharge of the jurors. It does not. This event cannot terminate jeopardy any more than a failure of a jury to reach a verdict. See Richardson, 468 U.S. at 325, 104 S.Ct. at 3086. We hold that jeopardy does not terminate during the process of jury selection merely because sworn jurors are excused during the process of selecting alternates.
 
 
 10
 It is true that Trigg and Cottle have a recognized interest in retaining a chosen jury, Crist v. Bretz, 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978), but that right is not absolute; if it were, Rule 24(c)'s provision for the replacement of original jurors with alternates would be unconstitutional. That is plainly not the case, as our opinion in Echavarria demonstrates. The replacement of jurors with alternates has been held constitutional even when the substitution is made after jury deliberations have begun. United States v. Kopituk, 690 F.2d 1289, 1308-09 (11th Cir.1982), cert. denied, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983); United States v. Phillips, 664 F.2d 971, 991-93 (5th Cir.1981), cert. denied, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).
 
 
 11
 Trigg and Cottle contend that the record on appeal does not disclose any basis to conclude that the dismissed jurors would have been unavailable. But the judge's reasons for dismissal are irrelevant to the double jeopardy analysis where, as here, the fact of dismissal itself did not terminate the original jeopardy. We conclude that the alternate selection process used here is but a temporary delay on the way to final judgment and as such does not violate the Double Jeopardy Clause.
 
 
 12
 Trigg and Cottle nevertheless contend that the district judge's selection of jurors to replace the three dismissed from the original panel should not be analyzed as an application of Rule 24(c),[1] because he (1) referred to the replacement jurors as "replacements" and used the term "alternates" to refer only to the two jurors selected after the three replacements had been chosen and (2) awarded more extra peremptories than Rule 24(c) requires. Neither point is fatal. First, in Echavarria we condoned the selection of alternates after the decision to excuse a juror had been made. 904 F.2d at 1394-95. The district judge's use of different terminology in this case does not change that result. Second, in United States v. Balk, 706 F.2d 1056, 1059 (9th Cir.1983), we held that the granting of extra peremptories will be upheld on appeal absent a showing of prejudice to the defendant. Trigg and Cottle have alleged no prejudice caused by the district court's allowance of additional peremptories. Finally, Trigg and Cottle make a "slippery slope" argument: what if the district judge had excused six original jurors, and then proceeded to select six replacements and three alternates, for a total of nine, when Rule 24(c) provides for only six? Such a violation of Rule 24(c) would indeed present a novel and difficult question. This case, however, does not present it, as the judge selected a total of only five jurors in addition to the original twelve, one shy of Rule 24(c)'s stated maximum.
 
 III
 
 13
 Trigg and Cottle argue that the district court abused its discretion by dismissing three jurors without cause, in violation of Rule 24(c). Whether a district court's jury selection procedure comports with the requirements of Rule 24(c) presents a mixed question of law and fact that we review de novo. See United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). "When allowable under Rule 24(c), [however,] the ... decision [to substitute an alternate for a juror] is committed to the sound discretion of the trial judge." United States v. Jones, 534 F.2d 1344, 1346 (9th Cir.), cert. denied, 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 108 (1976).
 
 
 14
 Trigg and Cottle rely on United States v. Smith, 550 F.2d 277 (5th Cir.), cert. denied, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977), for the proposition that in order to replace a juror with an alternate under Rule 24(c), sufficient facts must be presented "which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." Id. at 285. The very case relied on by Trigg and Cottle, however, holds that a "trial court's exercise of this discretion is not to be disturbed absent a showing of bias or prejudice to the defendant." Id.; see also United States v. Agramonte, 980 F.2d 847, 850 (2d Cir.1992) (district court's decision to replace juror at any time prior to commencement of deliberations will be upheld unless defendant shows bias or prejudice); accord United States v. Warren, 973 F.2d 1304, 1308 (6th Cir.1992); United States v. Doerr, 886 F.2d 944, 970 (7th Cir.1989). We agree with the reasoning of our sister circuits. Because Trigg and Cottle have not directed our attention to any evidence of prejudice they may have suffered as a result of the district court's jury selection procedure, we reject their argument that the district court's replacement of jurors prior to trial constitutes grounds for reversal.
 
 
 15
 Cottle's other claims are disposed of in an unpublished disposition.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Rule 24(c) of the Federal Rules of Criminal Procedure states:
 (c) Alternate Jurors. The court may direct that not more than 6 jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. Each side is entitled to 1 peremptory challenge in addition to those otherwise allowed by law if 1 or 2 alternate jurors are to be impanelled, 2 peremptory challenges if 3 or 4 alternate jurors are to be impanelled, and 3 peremptory challenges if 5 or 6 alternate jurors are to be impanelled. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by these rules may not be used against an alternate juror.