64 F.3d 660
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph Andre McMILLAN, a/k/a John Doe, a/k/a Poo, a/k/a
Anthony, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Lorenzo WHITE, a/k/a John Doe, a/k/a Poo, a/k/a Anthony,
Defendant-Appellant.
 Nos. 94-5898, 94-5899.
 United States Court of Appeals, Fourth Circuit.
 Aug. 24, 1995.
Decided Aug. 24, 1995.
 
 Thomas C. Carter, Alexandria, VA; James C. Love, Love, Kielsgard & Associates, Fairfax, VA, for Appellants.
 Helen F. Fahey, United States Atty., John N. Nassikas, III, Asst. U.S. Atty., Alexandria, VA, for Appellee.
 Before WILLIAMS and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Lorenzo White and Joseph Andre McMillan appeal their convictions for kidnapping, 18 U.S.C.A. Sec. 1201(a)(1) (West 1984 & Supp.1995). Additionally, McMillan challenges his sentence. Finding no error, we affirm.
 
 
 2
 * Evidence at trial revealed that the victim, Latasha Harkum, broke off her relationship with White in September 1991. White, who did not want the relationship to end, continued to contact Harkum. She and her family moved and changed their telephone number in an effort to cut off all contact with White. Eventually, White tracked Latasha to her new residence.
 
 
 3
 On January 19, 1992, Latasha received a call from a girl who instructed her to go outside to meet her godbrother. Latasha put jeans and a sweatshirt on over her pajamas and went outside. As she was descending a flight of steps, White grabbed her from behind and covered her mouth. Despite Latasha's resistance, White was able to place her in his car and drive off. Latasha attempted to escape, but each time she unlocked her door, White was able to lock it again. Once the car picked up speed, Latasha was afraid to try to escape.
 
 
 4
 They drove from Washington, D.C., through Maryland, and into Virginia. As they drove, Latasha asked White why he was doing this. He responded that he thought she was having a relationship with other people. He threatened to strike her if she said the wrong thing. When she did say something, someone in the back seat of the car struck her in the head. Latasha could not identify the two persons in the back seat because they were holding coats over their heads. White repeatedly accused her of seeing other men, Latasha continued to deny this, and the men in the back seat began to urge White to kill her because she was lying.
 
 
 5
 White struck Latasha in the mouth, causing her to bleed. The men in the back seat fondled Latasha and chanted that she should be killed. White struck Latasha in the back of her head with a miniature bat he retrieved from the car's glove compartment. He eventually stopped the car, ordered her out, told her she was to have sex with all three men, then returned to the car and drove off. Police who found Latasha testified that she was crying, trembling, and bleeding. They took her to a hospital. The doctor who treated her testified that Latasha's injuries were consistent with having been punched in the mouth with a fist and having been hit on the back of the head with a bat or a stick.
 
 
 6
 Initially, Latasha did not know the identity of either rear seat passenger. Subsequently, McMillan asked her if she were still upset about what he and White had done to her. She understood him to be referring to events of January 19. Later, she again encountered McMillan, who asked her if she had given his name to the police. A detective who questioned McMillan testified that McMillan admitted that he was one of White's passengers on January 19 and corroborated Latasha's story that he had concealed his identity by hiding under coats.
 
 
 7
 Following a jury trial, White and McMillan were convicted of kidnapping. White received a 110-month sentence, while McMillan was sentenced to seventy-eight months in prison. These appeals followed.
 
 II
 
 8
 Appellants first argue that the evidence was insufficient to sustain their convictions. "To sustain a conviction the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir.1993). In the case of kidnapping, the Government must show that the defendant transported the victim across a state line and did so without the victim's consent. United States v. Childress, 26 F.3d 498, 501-502 (4th Cir.1994), cert. denied, 63 U.S.L.W. 3625 (U.S.1995). There was ample evidence in this case that White and McMillan transported Latasha across a state line and did so without her consent.
 
 III
 
 9
 Appellants also complain that a juror was dismissed close to the end of trial and replaced by an alternate juror. The record reveals that on Monday, August 15, the first day of trial, a juror informed the court that he needed to take a child to college on Wednesday. The district court was hopeful that trial would be over before Wednesday and did not dismiss the juror at that time. Late on Tuesday, it was apparent that the trial would continue to Wednesday. The juror stated that he needed to have the child at college by 10:00 a.m. the following day. Over defense objections, the district court dismissed the juror and replaced him with an alternate.
 
 
 10
 "Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Fed.R.Crim.P. 24(c). The determination to excuse a juror is reviewed for abuse of discretion. United States v. Simpson, 992 F.2d 1224, 1228 (D.C.Cir.), cert. denied, 62 U.S.L.W. 3252 (U.S.1993). Generally, the replacement of a juror prior to deliberations does not constitute an abuse of discretion absent a showing of bias or prejudice to the defendant. United States v. Trigg, 988 F.2d 1008, 1011 (9th Cir.1993). Neither McMillan nor White has demonstrated bias or prejudice flowing from the replacement of the juror. We find no abuse of discretion in that juror's dismissal.
 
 IV
 
 11
 Finally, McMillan contends that the district court erred when it refused to reduce his offense level by two levels because of his allegedly minor role in the offense. See United States Sentencing Commission, Guidelines Manual, Sec. 3B1.2 (Nov.1994). A defendant bears the burden of proving by a preponderance of the evidence that he is entitled to a reduction for his role in the offense. United States v. Reavis, 48 F.3d 763, 769 (4th Cir.), cert. denied, 63 U.S.L.W. 3890 (U.S.1995). The determination of whether a defendant played a minor role in an offense is a question of fact which will be overturned only if clearly erroneous. United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir.1989).
 
 
 12
 The district court refused to find that McMillan played a minor role, noting that McMillan had hidden in the back seat, had struck and fondled Latasha during the drive, and had joined in urging that she be killed. Under these circumstances, we conclude that the district court's finding that McMillan was not a minor participant was not clearly erroneous.
 
 V
 
 13
 We accordingly find no merit in the arguments presented in these appeals. As our review of the materials before us reveals that it would not aid the decisional process, we dispense with oral argument.
 
 
 14
 AFFIRMED.