88 F.3d 920
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ninous ISOM, Jr., a/k/a Knott; James A. Isom a/k/a Jesse;
Jerome L. Isom, a/k/a Jadey; a/k/a Po Pimp;
Riley Bailey; Melvin Smith,
Defendants-Appellants.
 No. 92-3014.
 United States Court of Appeals,
Eleventh Circuit.
 July 19, 1996.
 
 Deborah R. Jordan, Tampa, FL, for Ninous Isom, Jr.
 Adrian R. Castro, Tampa, FL, for James A. Isom.
 Mark Lipinski, Bradenton, FL, for Jerome L. Isom.
 Richard L. Cox, Jr., Tampa, FL, for Riley Bailey.
 George E. Becker, Chicago, IL, for Melvin Smith.
 Robert W. Genzman, U.S. Attorney, Susan H. Rothstein, Tamra Phipps, Asst. U.S. Attys., Tampa, FL, for U.S.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HATCHETT, Circuit Judge, HENDERSON, Senior Circuit Judge, and MILLS*, District Judge.
 PER CURIAM:
 
 
 1
 The appellants, Ninous Isom, Jr., Jerome Isom, James Isom, Melvin Smith and Riley Bailey, were convicted after a joint trial in the United States District Court for the Middle District of Florida of various criminal offenses and were sentenced in accordance with the United States Sentencing Guidelines.[1] On appeal they assert numerous arguments for the reversal of their convictions and sentences.[2] After careful consideration of all of the issues raised, we find that only one ground--that concerning jury selection--merits further analysis and deliberation.[3] After a review of all the allegations of error, including those dealing with the selection of the jury, we hold that none of the appellants' contentions warrant reversal. Consequently, we affirm their convictions and sentences in all respects.
 
 I. BACKGROUND
 
 2
 The jury selection process began in this case on May 13, 1992. For various reasons, including difficulties posed by the projected four-week length of the trial, numerous prospective jurors were excused from service upon request. In due course, after all challenges for cause were entertained by the court and each side had exercised its allotted number of peremptory strikes, a panel of twelve jurors was selected on May 14, 1992. After these twelve were chosen, three members of the venire remained from which to pick alternate jurors. For this purpose, the trial court permitted the prosecution and the defense one peremptory challenge each.[4] The defense exercised its strike and the government did not, leaving two alternates. Thereafter, the defense requested an additional peremptory challenge with which to strike one of these two alternates. The court denied the request and the twelve jurors and two alternates were sworn and seated. After receiving preliminary instructions, they were excused for the day and were directed to report the following Monday, at which time opening statements were scheduled to commence.
 
 
 3
 When the court reconvened on Monday, May 19, 1992, the trial judge announced that one of the twelve regular jurors was excused because of a death in his family and another had been relieved of duty for medical reasons. After hearing no objections from the parties, those jurors were replaced by the two alternates selected on May 14, 1992, which left no stand-by jurors for the trial. The court then suggested that another venire be called for the purpose of selecting new alternates. In response to the court's solicitation of objections to this proposal, Ninous Isom's attorney requested that the two original alternates, who were at that point a part of the twelve-member panel, as well as the prospective alternate who had previously been peremptorily stricken by the defense, be returned to the proposed new pool of alternates. Counsel explained that this would enable her to use the peremptory challenges allowed in connection with striking the new alternate pool to eliminate an alternate juror that had already been seated. The trial court denied this request, reasoning that the original alternates had been selected with the prospect in mind that they would replace regular jurors who were unable to complete their service and that upon the happening of that event, they would become a part of the twelve-member panel. Defense counsel then stated:
 
 
 4
 For the record, I do object to this procedure. I think that Rule 24 specifies the number of peremptories to be given in choosing alternates based on the number of alternates to be chosen and I think that in general new Jurors or now alternates cannot be chosen once the trial has begun. I think technically with the swearing of the Jury, the trial has begun and I do oppose the procedure.
 
 
 5
 (R10-8). The court decided, however, that the need for alternate jurors was great given the predicted length of the trial and as demonstrated by the problems already encountered in choosing and keeping jurors. The court consequently ordered that alternates be selected from the new pool. This was accomplished and three new alternates were chosen and sworn.[5]
 
 
 6
 Later, during the course of the trial, all of the parties involved agreed, for reasons not relevant to this appeal, that it might become necessary to excuse another of the original twelve jurors from deliberation on the case. The parties also stipulated that, in that event, the juror should be replaced with the first of the newly selected alternates. These circumstances eventually came to fruition. As a result of this development, the jury which deliberated on the case included one member of the second set of alternates.
 
 
 7
 On appeal, the appellants raise two points of error with respect to the selection and composition of the jury. First, they urge that they were entitled to be tried by the first twelve-member jury sworn and that the court's insistence on providing for a second panel of alternate jurors, one of whom ultimately participated in the deliberations, effected a de facto mistrial and resulted in a double jeopardy violation.[6] Second, the appellants contend that the court's refusal to include the originally selected alternates in the second alternate pool unfairly restricted their use of peremptory challenges.
 
 II. STANDARD OF REVIEW
 
 8
 Whether the appellants' prosecution was in violation of the Double Jeopardy Clause is a question of law subject to de novo review. United States v. Nyhuis, 8 F.3d 731, 734 (11th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994).[7] The procedure adopted by the trial court to regulate the selection of jurors and the parties' exercise of peremptory challenges is reviewed for abuse of discretion. United States v. Bryant, 671 F.2d 450, 455 (11th Cir.1982).
 
 III. DISCUSSION
 
 9
 A. The Double Jeopardy Claim.
 
 
 10
 We note at the outset that the parameters of the appellants' double jeopardy argument are somewhat hazy, but, they apparently contend that the occurrence of the alleged de facto mistrial barred their further prosecution. We reject this claim for two reasons.
 
 
 11
 First, we disagree that there was a de facto mistrial. The Supreme Court has observed that in instances where the required number of jurors needed to render a verdict is reduced by unforeseen circumstances, the trial court should discharge the jury and direct a retrial. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). In this case, however, there was no event giving rise to the declaration of a mistrial. At the time the court proposed the selection of additional alternate jurors, there was a full compliment of petit jurors. The defendants did not seek a mistrial based upon the court's decision to provide for alternates at that point, but instead asserted a supposed right to proceed without alternates predicated upon a notion that the composition of the jury had to remain static once jeopardy attached.[8] The district court acted within its discretion, however, when it determined, prior to opening statements and the introduction of evidence, to impanel alternate jurors to prevent a mistrial should the jury's number be impermissibly diminished at a later time. See supra, note 4; see also United States v. Trigg, 988 F.2d 1008, 1009-10 (9th Cir.1993) (affirming the trial court's refusal to declare a mistrial under almost identical circumstances).
 
 
 12
 Second, the expansive view of the protection afforded by the Double Jeopardy Clause urged by the appellants has never been the law. True, a defendant has a "valued right to have his trial completed by a particular tribunal." Wade, 336 U.S. at 689, 69 S.Ct. at 837, 93 L.Ed. at 978. That interest is far from absolute, however, and "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Id.; see also United States v. Jorn, 400 U.S. 470, 484-86, 91 S.Ct. 547, 556-58, 27 L.Ed.2d 543, 556-57 (1971). The trial transcript discloses that at the time the court ordered the second round of alternate juror selection, it informed the parties that this was purely a precautionary measure and that, if and when it became necessary to decide whether to place a subsequently selected alternate on the regular jury, the parties would be free to discuss the possibility of proceeding with less than twelve jurors, as permitted by Fed.R.Crim.P. 23(b).[9] When these circumstances occurred, the appellants did not pursue any interest in having the remainder of the original tribunal decide their fate by requesting a Rule 23(b) stipulation. Instead, to the contrary, they stipulated that the subsequently selected alternate should replace the regular juror who had been excused. No right of the appellants was abridged under these circumstances.
 
 
 13
 B. The Peremptory Challenge Claim.
 
 
 14
 The appellants cite no authority on point to support their extraordinary contention that the alternate jurors who were first sworn and made regular jurors should have been removed from the twelve-member panel and included in the second alternate jury pool for the alternate selection process. Indeed, had the trial court agreed to such a procedure, it would have run afoul of Fed.R.Crim.P. 24(c), which prohibits the use of peremptory challenges granted specifically in connection with selecting alternates from being utilized to strike regular jurors.[10] Once the originally selected alternates were made a part of the regular jury, they lost their alternate status. Thus, the appellants' request for permission to use alternate peremptory challenges with respect to these jurors was improper and the trial court did not abuse its discretion by denying it.
 
 IV. CONCLUSION
 
 15
 For the foregoing reasons, the district court's judgments of conviction and sentence with respect to each appellant are AFFIRMED.
 
 
 
 *
 Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by designation
 
 
 [1]
 The following summary of the appellants' convictions and sentences relates to the charges lodged against them in a superseding indictment. Ninous Isom, Jr., was convicted of conspiracy to distribute fifty grams or more of cocaine base, 21 U.S.C. § 846 (count one), possession with intent to distribute fifty grams or more of cocaine base, 21 U.S.C. § 841(a)(1) (counts three through five) and money laundering, 18 U.S.C. §§ 2, 1956(a)(1) (counts ten through fourteen). Jerome Isom was found guilty of conspiracy to distribute fifty grams or more of cocaine base (count one), possession with intent to distribute fifty grams or more of cocaine base (counts two and four), and money laundering (counts seven, eight, nine and fourteen). In addition to being ordered to pay special assessments of $450.00 and $350.00, respectively, they each received aggregate sentences amounting to life imprisonment and five years of supervised release. James Isom was convicted of counts one, three, four and fourteen. He received aggregate terms of imprisonment totaling 360 months and five years of supervised release and was ordered to pay a special assessment of $200.00. Melvin Smith was convicted of counts one and five. He was sentenced on each count to concurrent terms of 270 months' imprisonment, concurrent five-year terms of supervised release and was ordered to pay a $100.00 special assessment. Riley Bailey was convicted of counts one, two and three. He received a $150.00 special assessment, concurrent terms of imprisonment totaling 360 months and concurrent five-year terms of supervised release
 
 
 [2]
 Whenever relevant, the appellants have adopted the issues and arguments raised on appeal by each other
 
 
 [3]
 In addition to the jury selection question, for reversal of their convictions the appellants assert that (1) they were unduly prejudiced by the admission during the trial of certain evidence relating to weapons; (2) government agent, Vincent Verdi, was permitted to testify after having been discharged by the court from his subpoena in violation of Fed.R.Evid. 615; (3) in-court identifications of Bailey were tainted by a suggestive out-of-court identification procedure; (4) there was insufficient evidence to support Smith's conspiracy conviction; (5) James Isom's money laundering convictions were not supported by sufficient evidence; (6) the defendants were prejudiced by the government's delay in complying with discovery orders; (7) the prosecutor engaged in improper closing argument; (8) the jury instructions with respect to money laundering were misleading; and (9) the timing of the court's charge given pursuant to Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), placed undue pressure on the jury to reach a verdict. All of the appellants urge that they were improperly sentenced in accordance with the guidelines governing cocaine base. In addition, Bailey contends that he should not have been sentenced as a career offender. The Isoms each argue that they should not have received enhancements for possession of a firearm or for their role in the offenses. Finding no fault with the district court's disposition on each of these assignments of error, we affirm its judgment without further discussion
 
 
 [4]
 Rule 24 of the Federal Rules of Criminal Procedure gives trial courts discretion to direct the selection of up to six alternate jurors to replace regular jurors who are unable to complete their jury service. Fed.R.Crim.P. 24(c). When one or two alternate jurors are to be impaneled, the prosecution and the defense are entitled to one peremptory challenge each. For choosing three or four alternates, they are allowed two peremptory challenges each and three peremptory strikes may be granted for the selection of five or six alternates. Id
 
 
 [5]
 During this round of selecting alternates, the court allowed each side three peremptory challenges
 
 
 [6]
 The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall ... be twice put in jeopardy of life or limb" for the same offense
 
 
 [7]
 Although the appellants did not use the words "double jeopardy" when they objected to the second round of jury selection, they did maintain that, with the initial swearing of the jury the trial began, precluding further selection of jurors. We construe this argument as sufficient to preserve their claim that, once jeopardy attached with the swearing of the jury, see infra, note 8, any subsequent alteration of its composition was prohibited by the Double Jeopardy Clause
 
 
 [8]
 Jeopardy attaches when a jury is impaneled and sworn, or, in the case of a bench trial, when the court begins to receive evidence. United States v. Martin Linen Supply Co., 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 650 (1977)
 
 
 [9]
 Rule 23(b) states in relevant part:
 (b) Jury of Less Than Twelve. Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences.
 
 
 [10]
 Rule 24 governs the number of peremptory challenges allowed and the manner in which they may be exercised. Subsection (c) specifies that "[t]he additional peremptory challenges [granted for use in selecting alternates] may be used against an alternate juror only." Fed.R.Crim.P. 24(c)