[No. S105271. Mar. 20, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL HERNANDEZ, Defendant and Appellant.

## COUNSEL

Nancy J. King, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson, Kenneth C. Byrne, Lance E. Winters, Donald E. De Nicola and Richard T. Breen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—In this case, we must decide whether the improper discharge of a single seated juror during a criminal trial warrants not only a reversal of the ensuing judgment of conviction, but also bars retrial of the defendant on double jeopardy principles. We conclude that, although defendant is entitled to the benefit of a reversal of his conviction by reason of the error in excusing the juror, he is not also immune from reprosecution. As a general rule, the double jeopardy guarantee imposes no limitation on the power to retry a defendant who has succeeded in having his conviction set aside on appeal on grounds other than insufficiency of evidence. (E.g., *United States v. DiFrancesco* (1980) 449 U.S. 117, 131 [101 S.Ct. 426, 434, 66 L.Ed.2d 328] (*DiFrancesco*).) Accordingly, we respectfully disagree with the Court of Appeal's ruling that defendant is immune from reprosecution simply because the trial court erred in discharging a single juror.

Manuel Hernandez appeals from the judgment entered following a jury trial that resulted in his conviction on 22 counts of sexual abuse of a child under 14, lewd acts on a child, oral copulation of a person under age 16, and sexual penetration by a foreign object. He received a sentence of 43 years four months. The Court of Appeal concluded the trial court committed reversible error by removing a juror from the panel near the end of trial, and we will assume, for purposes of our discussion, that conclusion was correct. The Court of Appeal also held that double jeopardy principles would bar a

retrial. After granting review, we limited the issues to the question whether double jeopardy bars retrial. As will appear, we reverse the Court of Appeal's judgment and remand for further proceedings consistent with this opinion.

## FACTS

The following uncontradicted facts are largely taken from the Court of Appeal opinion in this case. Near the end of trial, and before cross-examination of defendant, Juror No. 8 informed the court that she was bothered by the tone of the prosecutor's cross-examination of a defense witness and her perception that during the testimony, both the prosecutor and the judge were smirking or making faces. After a colloquy with the court and prosecutor, the juror denied that she would be unfair but admitted she was "disappointed in certain aspects" of the trial.

The trial court nonetheless concluded, based on Juror No. 8's remarks and "body language," that "I don't think she can give a fair trial to the People. I don't think she should be kept on the jury." The prosecutor agreed, noting his concern about the juror's emotional state.

Defendant's attorney stated he would describe Juror No. 8's behavior as "concerned." He stressed that Juror No. 8 "stated she could be fair," and therefore he would "oppose a challenge for cause." The court nonetheless concluded that "the totality of the circumstances," showed that the juror's ability to do her job and "remain an impartial juror without leaning towards one side or the other" had been "substantially impaired." The court then invited a challenge for cause on the part of the prosecution, and promptly granted the request.

After removing Juror No. 8, the court designated an alternate juror to take her place, and trial resumed, culminating in a guilty verdict.

## THE COURT OF APPEAL'S DECISION

On appeal, this case presented three discrete issues: (1) Did the court err in discharging Juror No. 8? (2) If so, was the error prejudicial? And (3) if prejudicial error occurred, do double jeopardy principles bar retrial? As previously noted, the Court of Appeal found prejudicial error in discharging the juror, and for purposes of our review, we accept that determination. (See *People v. Cleveland* (2001) 25 Cal.4th 466, 484-486 [106 Cal.Rptr.2d 313, 21 P.3d 1225]; *People v. Hamilton* (1963) 60 Cal.2d 105, 128 [32 Cal.Rptr. 4, 383 P.2d 412], overruled on other grounds in *People v. Morse* (1964) 60

Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].) We disagree, however, with the Court of Appeal's further conclusion that double jeopardy bars retrial.

The Court of Appeal reasoned that the trial court's error in excusing Juror No. 8 was comparable to declaring a mistrial without legal necessity. The appellate court correctly observed that a discharge *of the entire jury* without a verdict is equivalent to an acquittal and bars a retrial unless defendant consented to it, or legal necessity required it. (E.g., *Curry v. Superior Court* (1970) 2 Cal.3d 707, 717-718 [87 Cal.Rptr. 361, 470 P.2d 345]; *Paulson v. Superior Court* (1962) 58 Cal.2d 1, 9 [22 Cal.Rptr. 649, 372 P.2d 641]; see *Crist v. Bretz* (1978) 437 U.S. 28, 34, fn. 10 [98 S.Ct. 2156, 2160, 57 L.Ed.2d 24].) According to the Court of Appeal, the "unnecessary mistrial" rule is founded on the idea that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal . . . ." (*Green v. United States* (1957) 355 U.S. 184, 187 [78 S.Ct. 221, 223, 2 L.Ed.2d 199]; see *Curry, supra,* at p. 717.)

The Court of Appeal further reasoned that, in light of the unnecessary mistrial rule, "it necessarily follows that reconstituting a jury by discharging one or more of its members over defense objection without proper justification must lead to the same result, particularly where, as here, the discharge resulted in a jury less favorable to the defendant." The Court of Appeal observed that under Penal Code section 1089, the substitution of an alternate juror for one of the regular jurors may be accomplished only upon "good cause." Prior cases have indicated that, assuming compliance with Penal Code section 1089, jeopardy does not attach until the alternate juror is sworn (e.g., *In re Mendes* (1979) 23 Cal.3d 847, 853 [153 Cal.Rptr. 831, 592 P.2d 318]; *People v. Hess* (1951) 107 Cal.App.2d 407, 425-426 [237 P.2d 568]), and the discharge of a juror *for good cause* amounts to a legal necessity satisfying any claim of double jeopardy (see *People v. Collins* (1976) 17 Cal.3d 687, 696-697 [131 Cal.Rptr. 782, 552 P.2d 742]). Here, however, we assume for purposes of this appeal that Juror No. 8 was discharged *without good cause*. In the present Court of Appeal's view, that improper discharge was legally equivalent to an unnecessary mistrial.

The Court of Appeal found support in *People v. Young* (1929) 100 Cal.App. 18 [279 P. 824] (*Young*), a case which took the position that double jeopardy principles forbid retrying the defendant following the wrongful discharge of a seated juror over the defendant's objection. In *Young*, after the regular and alternate jurors were selected, but before receipt of evidence, the trial court permitted the prosecutor to exercise an unauthorized peremptory

challenge against one of the regular jurors who had belatedly admitted being acquainted with a prospective defense witness. Inexplicably, the court replaced the juror from the venire rather than using one of the alternate jurors. *Young*, in barring future retrial, reasoned that upon the selection of the original jury and alternates, jeopardy attached and defendant could not be again subjected to jeopardy unless the jury was discharged before reaching its verdict, with his consent or by reason of some legal necessity. (*Id.* at p. 23.)

The present Court of Appeal concluded that to allow the prosecution to retry defendant would violate several related policies underlying the double jeopardy clause, namely, protecting the interest of the accused in retaining his "chosen jury" (see *Crist v. Bretz, supra*, 437 U.S. at p. 35 [98 S.Ct. at pp. 2160-2161]), assuring a fair and impartial jury rather than one selected by the prosecution (see *Young, supra,* 100 Cal.App. at p. 23), and avoiding trials that unduly favor the prosecution (*Larios v. Superior Court* (1979) 24 Cal.3d 324, 329 [155 Cal.Rptr. 374, 594 P.2d 491]). The Court of Appeal observed that "[i]f the result of discharging a juror sympathetic to the defense without good cause was nothing more than a reversal of the conviction and remand for trial minus the offending juror, we fear such discharges could become routine."

## DISCUSSION

We disagree with the Court of Appeal's legal reasoning, its application of the various policy concerns underlying the double jeopardy clause, and its concern about "routine" improper discharges of seated jurors. ▉ As we explain below, (1) generally, the double jeopardy guarantee imposes no limitation on the power to retry a defendant who has succeeded in having his conviction set aside on appeal on grounds other than insufficiency of evidence, (2) the policies underlying double jeopardy do not warrant the ultimate sanction of immunity from prosecution under the circumstances in this case, and (3) no "routine" discharge of jurors in violation of Penal Code section 1089 could occur without the routine concurrence of the trial court, a highly unlikely prospect.

▉ As a general rule, it is well established that if the defendant secures on appeal a reversal of his conviction based on trial errors other than insufficiency of evidence, he is subject to retrial. (*DiFrancesco, supra,* 449 U.S. at p. 131 [101 S.Ct. at p. 434]; *United States v. Scott* (1978) 437 U.S. 82, 90-91 [98 S.Ct. 2187, 2193-2194, 57 L.Ed.2d 65]; *Burks v. United States* (1978) 437 U.S. 1, 14-15 [98 S.Ct. 2141, 2148-2149, 57 L.Ed.2d 1]; *United States v. Ball* (1896) 163 U.S. 662, 672 [16 S.Ct. 1192, 1194-1195, 41 L.Ed.

300]; *People v. Hatch* (2000) 22 Cal.4th 260, 271-274 [92 Cal.Rptr.2d 80, 991 P.2d 165]; *People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 72, 77-78 [2 Cal.Rptr.2d 389, 820 P.2d 613]; *People v. Lo Cigno* (1965) 237 Cal.App.2d 470, 472 [46 Cal.Rptr. 918]; see 1 Wharton, Criminal Law (15th ed. 1993) Defenses, § 64, pp. 485-487; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, § 178, pp. 534-535; but see *U. S. v. Wallach* (2d Cir. 1992) 979 F.2d 912 [double jeopardy may bar retrial if prosecutor engages in deliberate impropriety designed to avoid acquittal].)

As we stated recently in *People v. Hatch, supra,* 22 Cal.4th at page 274, quoting from *Tibbs v. Florida* (1982) 457 U.S. 31, 42-43 [102 S.Ct. 2211, 2219, 72 L.Ed.2d 652], if sufficient evidence exists to support a conviction, "retrial simply 'affords the defendant a second opportunity to seek a favorable judgment' and does not violate the constitutional prohibition against double jeopardy."

The court in *People v. Burgess* (1988) 206 Cal.App.3d 762 [253 Cal.Rptr. 828] (*Burgess*), applied the foregoing general rule in a case quite similar to ours. In *Burgess,* the trial court had erred in allowing the prosecutor, over the defendant's objection, and before opening statements or receipt of evidence, to exercise a peremptory challenge of an empanelled and sworn juror, replacing her with an alternate juror. (See former Pen. Code, § 1068.) Faced with defendant's reliance on *Young, supra,* 100 Cal.App. 18, the *Burgess* court reexamined the various policies underlying the double jeopardy clauses and, unlike *Young,* found that the defendant had suffered "no meaningful deprivation or violation of those protections or policies." (*Burgess, supra,* at p. 768.) *Burgess* refused to hold that the erroneous exclusion of a single juror was the equivalent of a mistrial. (*Ibid.*; see also *People v. Hohensee* (1967) 251 Cal.App.2d 193, 203-204 [59 Cal.Rptr. 234] [improper replacement of seated juror]; *People v. Burns* (1948) 84 Cal.App.2d 18, 32-33 [189 P.2d 868] [same].)

The *Burgess* court distinguished *Young, supra,* 100 Cal.App. 18, as involving selecting a new juror from the venire after jeopardy had attached, rather than picking an alternate from the previously selected panel. (*Burgess, supra,* 206 Cal.App.3d at p. 768.) The court noted that in *People v. Hamilton, supra,* 60 Cal.2d at page 128, involving wrongful discharge of a juror during the penalty phase of a capital case, we reversed the judgment but remanded for new trial. (*Burgess, supra,* 206 Cal.App.3d at p. 769.)

In addition to *Burgess,* we find instructive the high court's decision in *DiFrancesco, supra,* 449 U.S. 117. The issue there was whether a federal statute (18 U.S.C.A. former § 3576) allowing the government to appeal from

a "dangerous special offender" finding and consequent lengthier sentence violated double jeopardy principles. ■ In rejecting the argument, the court first reviewed the various policies and protections underlying, or afforded by, double jeopardy principles. These include (1) protecting the defendant from being subjected to the embarrassment, expense, ordeal, and anxiety of repeated trials, (2) preserving the finality of judgments, (3) precluding the government from retrying the defendant armed with new evidence and knowledge of defense tactics, (4) recognizing the defendant's right to have trial completed by a particular tribunal, and (5) precluding multiple punishment for the same offense. (*DiFrancesco, supra,* 449 U.S. at pp. 127-129 [101 S.Ct. at pp. 432-433]; see also *Green v. United States, supra,* 355 U.S. at pp. 187-188 [78 S.Ct. at pp. 223-224].)

The *DiFrancesco* court, in the course of upholding the federal appeals statute, reiterated the general rule that, absent insufficiency of evidence, double jeopardy does not bar retrial following reversal of a conviction on appeal. (*DiFrancesco, supra,* 449 U.S. at p. 131 [101 S.Ct. at p. 434].) The court, quoting from an earlier case, observed that it would be a " 'high price indeed for society to pay' " if reversible trial errors resulted in immunity from punishment. (*Ibid.,* quoting *United States v. Tateo* (1964) 377 U.S. 463, 466 [84 S.Ct. 1587, 1589, 12 L.Ed.2d 448].)

■ The Court of Appeal in the present case stressed the policy, mentioned in *DiFrancesco,* of assuring that trial is completed by a "particular tribunal" or "chosen jury." (See *Crist v. Bretz, supra,* 437 U.S. at p. 35 [98 S.Ct. at pp. 2160-2161]; *Downum v. United States* (1963) 372 U.S. 734, 736 [83 S.Ct. 1033, 1034, 10 L.Ed.2d 100]; *Wade v. Hunter* (1949) 336 U.S. 684, 689 [69 S.Ct. 834, 837, 93 L.Ed. 974]; *Stone v. Superior Court* (1982) 31 Cal.3d 503, 516, fn. 7 [183 Cal.Rptr. 647, 646 P.2d 809], and cases cited.) But these cases do no more than determine that jeopardy attaches once a jury and alternates are chosen (see *In re Mendes, supra,* 23 Cal.3d at pp. 853-854), and that granting an unnecessary mistrial bars retrial (see *Stone v. Superior Court, supra,* 31 Cal.3d at p. 516). They do not stand for the proposition that defendant becomes immune from further prosecution merely because one particular juror is improperly discharged, an alternate substituted, and an actual verdict duly entered. (See also *People v. McDermott* (2002) 28 Cal.4th 946, 983-984 [123 Cal.Rptr.2d 654, 51 P.3d 874] [reaffirming *Mendes*'s conclusion that jeopardy does not attach until alternate jurors are selected and sworn].)

As the high court stated in *Crist,* "The reason for holding that jeopardy attaches when the jury is empanelled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury. That interest was

described in *Wade v. Hunter, supra,* as a defendant's 'valued right to have his trial completed by a particular tribunal.' 336 U.S., at 689 [69 S.Ct. at p. 837]. It is an interest with roots deep in the historic development of trial by jury in the Anglo-American system of criminal justice. Throughout that history there ran a strong tradition that once banded together *a jury should not be discharged* until it had completed its solemn task of announcing a verdict." *(Crist v. Brest, supra,* 437 U.S. at pp. 35-36 [98 S.Ct. at p. 2161], italics added, fns. omitted.)

Here, defendant's chosen jury was not discharged but instead, with the substitution of a preselected alternate juror, remained intact until a verdict was rendered. In *People v. Burns, supra,* 84 Cal.App.2d 18, the court concluded that an alternate juror, even if improperly seated, is part of the same jury chosen by the defendant, so that he is not subjected to two different juries and double jeopardy is inapplicable. As stated in *Burns,* "Either the substitution of an alternate for a regular juror destroys the unity of the jury or it does not. If it does not destroy the unity of the jury as is settled . . . , then the substitution of an alternate for a regular juror in an unauthorized manner does not place the defendant twice in jeopardy but is merely an error of law . . . ." *(People v. Burns, supra,* 84 Cal.App.2d at p. 32.)

Cases from other jurisdictions uniformly hold that the discharge of an individual juror and substitution of an alternate does not terminate jeopardy. (See *U.S. v. Shinault* (10th Cir. 1998) 147 F.3d 1266, 1273-1276; *U.S. v. Isom* (11th Cir. 1996) 88 F.3d 920, 923-924; *U.S. v. Trigg* (9th Cir. 1993) 988 F.2d 1008, 1009-1010; *Com. v. Johnson* (1998) 426 Mass. 617 [689 N.E.2d 1327, 1333-1334]; *State v. Cook* (1995) 338 Md. 598 [659 A.2d 1313, 1321-1322]; *People v. Campbell* (1984) 126 Ill.App.3d 1028 [82 Ill.Dec. 39, 467 N.E.2d 1112, 1121]; *State v. Haar* (1990) 110 N.M. 517 [797 P.2d 306, 312-313]; *Worley v. State* (1953) 97 Okla.Crim. 271 [262 P.2d 483, 485-487]; *State v. Max* (Tenn.Crim.App. 1986) 714 S.W.2d 289, 293-294.) Even an improper discharge does not invoke double jeopardy and bar retrial. (See *State v. Santana* (2000) 135 Idaho 58 [14 P.3d 378, 383-384]; *Cantrell v. State* (1979) 265 Ark. 263 [577 S.W.2d 605, 607].)

The Court of Appeal likewise focused on "the importance of avoiding trials in which *undue advantage* has been placed in the hands of the prosecution *(Larios v. Superior Court, supra,* 24 Cal.3d at p. 329; *Downum v. United States, supra,* 372 U.S. at p. 736 [83 S.Ct. at p. 1034])." (Italics added.) Yet here, we cannot say that discharging Juror No. 8 gave the prosecutor any concrete advantage whatever. As the Court of Appeal opinion recites, "The record does not reflect that Juror No. 8 was biased in favor of

the defense or prejudiced against the People." Instead, the juror merely indicated she was "bothered by the tone of the prosecutor's cross-examination of a defense witness and her perception that during the testimony, both the prosecutor and the judge were smirking or making faces. . . . The reason for requesting the conference was 'to clear [her] mind.' " Thereafter, the juror confirmed that she was nonetheless "committed to being fair," and had formed no opinion as to the outcome of the case. The record contains nothing casting doubt on those declarations.

The Court of Appeal's conclusion that defendant was prejudiced by the juror's exclusion was based solely on "the loss of a juror who seemed inclined to give serious consideration to the testimony of the defense witnesses," rather than upon a finding of any undue prosecutorial advantage that might justify invoking double jeopardy principles to bar retrial.

The Court of Appeal also expressed concern that if the sole consequence of wrongfully excluding a juror sympathetic to the defense were merely reversal and retrial without the excluded juror, "we fear such discharges could become routine." This concern seems both unrealistic and unfair, overlooking the fact that such a discharge would require the concurrence of the trial judge, who ordinarily would not welcome routine reversals of his judgments. True, a prosecutor might risk a reversal and retrial in order to rid the jury of an obviously biased juror, yet any such obvious bias would justify an exclusion for cause. Similarly, although a trial court might routinely excuse a biased juror, excluding "borderline" jurors such as Juror No. 8 will be far less common, especially after the clarifying guidelines set forth in *People v. Cleveland, supra,* 25 Cal.4th at pages 484-486.

We think that error in discharging a juror should be treated no differently from any other trial error leading to reversal on appeal, such as prejudicial instructional or evidentiary error or ordinary prosecutorial misconduct. Applying the Court of Appeal's logic, all such errors theoretically could become "routine" if the only consequence were a reversal of the judgment yet, despite that speculative possibility, the law is clear that, as a general rule, errors other than insufficiency of evidence do not preclude retrial following reversal of conviction. In short, we do not share the Court of Appeal's concern that, unless retrial is precluded, improper exclusion of jurors will become commonplace.

Additionally, adopting the Court of Appeal's double jeopardy analysis could have unfortunate consequences. The high court has predicted that appellate courts might be less inclined to scrutinize the record for prejudicial error in criminal appeals if they knew that reversal for ordinary trial errors

would bar retrial. (*United States v. Tateo, supra,* 377 U.S. at p. 466 [84 S.Ct. at p. 1589].) Moreover, despite a showing of a juror's failure to deliberate or other possible misconduct, trial courts might prefer to await jury deadlock, mistrial and retrial, rather than to remove the juror and risk being reversed on appeal.

We conclude that double jeopardy principles do not bar retrial in this case. The judgment of the Court of Appeal is reversed and the cause remanded to that court for further proceedings consistent with our opinion. We disapprove *People v. Young, supra,* 100 Cal.App. 18, to the extent it is inconsistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Brown, J., and Moreno, J., concurred.

**WERDEGAR, J.**—I concur fully in the majority's conclusion: The midtrial dismissal of a single juror and replacement with a sworn alternate juror, though improper on the facts of this case, was not the functional equivalent of granting an unnecessary mistrial over defendant's objection and did not terminate jeopardy; thus, defendant's retrial is not precluded by the double jeopardy clauses of either the state or federal Constitution. I write separately to distance myself from a portion of the majority's analysis and to emphasize my understanding of the narrowness of today's decision.

The majority begins its analysis by citing *United States v. DiFrancesco* (1980) 449 U.S. 117 [101 S.Ct. 426, 66 L.Ed.2d 328] and the established rule that double jeopardy principles generally do not prohibit retrial after an appellate court reverses a criminal defendant's conviction. (Maj. opn., *ante,* at p. 6.) The majority repeats this point later in the analysis. (*Id.* at p. 7.) I find the majority's reliance on *DiFrancesco* misleading, for defendant does not claim his retrial would violate his constitutional rights simply because his first conviction was reversed on appeal. Instead, he claims that jeopardy, which indisputably had attached at his first trial when the jurors and alternates were sworn (*In re Mendes* (1979) 23 Cal.3d 847, 850 [153 Cal.Rptr. 831, 592 P.2d 318]), was terminated when the trial court erroneously dismissed Juror No. 8, and that a retrial would place him in jeopardy for a second time in violation of the double jeopardy clauses of the state and federal Constitutions. Because the relevant triggering event in this case is the dismissal of the juror, not the reversal of defendant's conviction on appeal, the majority's focus on the latter obscures the true issue. Moreover, because the rule generally (though not always) permitting retrial of an accused following appellate reversal of the judgment in a first trial is so very well established (*DiFrancesco, supra,* 449 U.S. at p. 131 [101 S.Ct. at p. 434];

*Green v. United States* (1957) 355 U.S. 184, 189 [78 S.Ct. 221, 224-225, 2 L.Ed.2d 199]; *People v. Henderson* (1963) 60 Cal.2d 482, 495 [35 Cal.Rptr. 77, 386 P.2d 677]; *People v. Tong* (1909) 155 Cal. 579, 584 [102 P. 263]; *id.* at p. 585 (conc. opn. of Sloss, J.); 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, § 178, pp. 534-535), the majority's insistence on this point suggests a degree of precedential support for its conclusion that does not exist.

Nevertheless, I agree that on the particular facts of this case, a retrial will not violate defendant's constitutional rights. Retrial would of course be prohibited if defendant's entire chosen jury of 12 persons had been improperly discharged against his wishes. Does the same rule apply if only a single juror is improperly discharged? We fortunately need not make a global pronouncement on that difficult question, for there are aspects of this case that simplify the issue for us and distinguish it from previous cases that posed similar double jeopardy problems. First, as the majority observes, "defendant's chosen jury was not discharged but instead, with the substitution of a preselected alternate juror, remained intact until a verdict was rendered." (Maj. opn., *ante*, at p. 9.) Unlike in *People v. Young* (1929) 100 Cal.App. 18 [279 P. 824], where an empaneled juror was discharged and replaced with someone called from the venire (*id.* at p. 19), Juror No. 8 in the instant case was replaced with a *sworn alternate*. This alternate, chosen during the same voir dire process by which the other jurors were selected, and sworn in at the same time, was already part of the jury. Hence, replacement with this alternate did not compromise the integrity of the jury. I thus agree with the court in *People v. Burns* (1948) 84 Cal.App.2d 18, 31 [189 P.2d 868], that replacement of a discharged juror with a previously sworn alternate rather than a new juror is a significant factor in determining whether jeopardy has been terminated.

Second, unlike in *People v. Burgess* (1988) 206 Cal.App.3d 762 [253 Cal.Rptr. 828], *voir dire was not reopened, and the parties were not allowed to exercise additional peremptory challenges*. Even in circumstances where but a single juror is replaced, reopening voir dire and permitting a party to exercise additional peremptory challenges, in addition to violating Code of Civil Procedure section 226, subdivision (a), may also compromise a defendant's constitutionally protected right to a chosen jury. (See *Crist v. Bretz* (1978) 437 U.S. 28, 35-36 [98 S.Ct. 2156, 2160-2161, 57 L.Ed.2d 24] [discussing the importance to a defendant of retaining his or her chosen

jury].) That the trial court below did not reopen voir dire is an important facet of the problem before us.[1]

Finally, contrary to the view of the Court of Appeal below, this was not a case where the trial court was "tinker[ing] with the makeup of the jury" so as to prejudice one side, or to ensure a particular outcome. To be sure, the trial court opined that it did not believe Juror No. 8 could "give a fair trial to the People." But the overall record indicates the court was concerned about the juror's "psychological health," noting her demeanor was "very tortured." I thus agree with the appellate court and the majority that " '[t]he record does not reflect that Juror No. 8 was biased in favor of the defense or prejudiced against the People.' " (Maj. opn., *ante*, at pp. 9-10.)

All of these factors together persuade me the majority is correct in concluding that retrial of this defendant will not violate his rights under the state and federal double jeopardy clauses. Were any of the above factors missing—for example, had the trial court dismissed more than a single juror, had it not replaced the discharged juror with a sworn alternate, had the court reopened voir dire and permitted additional peremptory challenges, or had the court's purpose in discharging the juror been to influence the verdict— this case might require a different outcome. Although affording a criminal defendant what is, in essence, immunity from future prosecution of his crimes as a result of a trial court's legal error exacts a steep price from society, both our state and federal Constitutions may require that price be paid in some cases. The answer awaits another day. The constellation of factors present in this case convinces me this is not such a case. With that understanding of the majority's opinion, I concur.

---

[1]Although the trial court invited the prosecutor to make a "challenge for cause," I agree with the Court of Appeal below that we should "presume the intention was to invoke Penal Code section 1089 . . . which . . . permits discharge of a juror for good cause after he or she has been empaneled and sworn."