Filed 8/31/20  P. v. Boyd CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>BRIAN THOMAS BOYD,<br><br>      Defendant and Appellant. | D075475<br><br><br><br><br>(Super. Ct. No. SCN372939) |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Reversed.

Arena Law Group and Mackenzie R. Colt; Richard L. Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Brian Thomas Boyd of two counts of making a criminal threat.  (Pen. Code,[1] § 422.)  Boyd admitted he had suffered a prior serious felony conviction and a prior strike conviction within the meaning of the "Three Strikes" law.  The court sentenced him to four years in prison.  Boyd

---

[1]     Undesignated statutory references are to the Penal Code.

contends that under Evidence Code sections 1101 and 352, the court erred by admitting testimony regarding a prior robbery conviction he suffered in 2008. He also contends there was insufficient evidence that he made clear and immediate threats that caused the victims to experience sustained fear within the meaning of section 422. We agree with the first contention and conclude the error was prejudicial. With respect to the second contention, we conclude a retrial on the charged counts is not precluded by double jeopardy considerations.[2] We reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Case*

In an amended complaint, the People charged Boyd with two counts of committing a criminal threat under section 422. It was also alleged that Boyd had suffered a prior serious felony conviction and a prior strike conviction.

*M.S.'s Testimony*

In April 2017, M.S., a water district construction inspector, saw Boyd alone at a construction site. Boyd appeared suspicious based on his "attire, his vehicle, and the timing of it being on a Saturday." M.S. saw cable wires and a hose running from Boyd's pickup to a fuel tank located on the construction site, and therefore assumed Boyd was stealing fuel. A large dog was in Boyd's pickup. M.S. asked Boyd if he had permission to take the fuel, and Boyd answered affirmatively. Boyd told M.S. something like, "I only took 40 or 50 gallons [of fuel], what's the big deal[?]"

---

[2] In light of our disposition, we regard as moot Boyd's contentions that the trial court improperly denied his request for a self-defense instruction with CALCRIM No. 3470, it erroneously instructed the jury with CALCRIM No. 372 regarding flight, and there was cumulative error.

2

M.S. telephoned the construction site foreman, J.R., who arrived immediately afterwards. J.R. confronted Boyd for taking the fuel without permission. Boyd stood "within a step or two" of J.R., and said something like, "You better get out of my face or I'm going to knock you out." Both J.R. and Boyd became "aggressive." M.S. intervened and warned Boyd against knocking out anyone. Boyd aggressively replied that he "would let his dog out of the truck to bite [M.S. and J.R.]." Regarding that as a threat, M.S. became afraid because "[d]og bites are vicious. You see it all the time. It's a lot of harm [that] comes out of it from a vicious animal like that." M.S. told Boyd he would cut the dog if it was turned loose. Although M.S. routinely carried a pocketknife for work, he did not pull it out.

Boyd responded, "I'll shoot you." M.S. feared for his life, and immediately stepped back. M.S. photographed Boyd's vehicle, and either M.S. or J.R. said they would call the sheriff. Boyd said something like, "[G]o for it. Call him." Immediately afterwards, Boyd left in his vehicle. The incident lasted approximately two minutes. On cross-examination, M.S. agreed with defense counsel that following the altercation, "it was clear [Boyd] was trying to get away."

M.S. went to his truck, searched his phone directory and took some time to "collect" himself. Approximately 10 minutes after the incident, he called the sheriff's department and reported that during the incident, Boyd "just went nuts."

M.S. said he had taken a photograph of Boyd's license plate number, which he relayed to the operator.

In February 2018, M.S. sought a restraining order against Boyd.

*J.R.'s Testimony*

When J.R. reached the construction site that morning, he asked Boyd why he was stealing the diesel fuel. Boyd became "aggressive" and said he could return the fuel. Afterwards, facing J.R., Boyd said something like, "I'm going to knock you down." J.R. felt scared and stepped back. Boyd said he was going to "release [his] dog to attack [J.R. and M.S.]" That statement further scared J.R., as the dog was barking in the pickup. J.R. told Boyd he was going to call the police. Boyd said he would get his gun and shoot M.S. Boyd also said, "Call them. And I'm going to be waiting for them up the hill." J.R. stepped back and told M.S., "[W]e better let [Boyd] go. I mean, it's no reason to put my life at risk." Boyd immediately left.

At trial, the prosecutor asked J.R. about the fear he experienced after Boyd threatened to get a gun:

"[Prosecutor:] Did you think that your life was at risk?

"[J.R.: ] At this point, yes.

"[Prosecutor:] Did you *continue* to think that your life may be at risk?

"[J.R.:] Yes.

"[Prosecutor:] Why?

"[J.R.:] Never know. I mean, we working [*sic*] on the field. We supposed [*sic*] to—you know—on the uphill." (Italics added.)

J.R. testified he never knew the defense witness, B.S. and did not see him at the construction site that day.

*Boyd's Prior Crime Evidence*

Boyd moved in limine to exclude testimony regarding his February 2008 robbery conviction, claiming it was prejudicial under Evidence Code sections 1101 and 352. He explained the court had dismissed that conviction under Penal Code section 1203.4, which provides that a defendant who "has

4

fulfilled the conditions of probation for the entire period of probation, *or* has been discharged prior to the termination of the period of probation" is entitled as a matter of right to have the plea or verdict changed to not guilty, to have the proceedings expunged from the record, and to have the accusations dismissed.

In opposing the motion, the prosecutor argued the prior crime evidence was admissible because in the instant case "there were robbery charges that were initially part of the complaint, initial[ly] part of the information, but have through [ ] prior judicial motions been removed from the case. . . . I don't want my witnesses precluded from discussing what they observed on the day in question. And what caused them concerns to contact [Boyd] on the day in question, although it could be characterized as uncharged conduct or offense."[3]

The court denied the motion: "Well, the prior incident involving . . . the attempted transfer of fuel . . . , I think is probative. I think it [ ] goes to the common design or plan. And also to [Boyd's] intent of why he had all the stuff hooked up." The court later explained its ruling, including its prejudice analysis under Evidence Code section 352: "In the case before the court[, Boyd] left the scene before it could be established how much of the fuel he was able to take. That is the only reason why those charges are not before the court. But the underlying conduct . . . that ultimately led to [Boyd] using threats to allegedly get away from the people that were confronting him, is the same type of conduct that was exhibited in the incident that happened in February of 2008. [¶] So it may be prejudicial. But it also has a lot of

---

3    The parties agreed that in the instant case, Boyd was originally charged with two additional counts of robbery for stealing fuel; however, Boyd successfully challenged those charges under section 995.

probative value because it's the same plan or scheme. It goes towards identity of the individual. These are very, to me, very unique types of offenses. And I have made the weighing factor [*sic*]. I think it does have probative value, which outweighs any prejudicial effect."

Following that ruling, a deputy sheriff who investigated the 2008 incident testified that he was on routine patrol at around 11:00 p.m. on February 26, 2008, when he observed Boyd taking fuel from a construction site. Boyd left the site, and the deputy sheriff stopped Boyd's vehicle approximately 35 minutes after he began surveilling Boyd. Upon request, Boyd presented his driver's license. The deputy sheriff identified Boyd at trial.

*Defense Case*

B.S. testified Boyd was his work foreman for three years. They went hiking that morning in April 2017, and parked their vehicles near the construction site. After the hike, they encountered M.S., who told them something like, "What the F are you doing here. You can't be here. This is my site." J.R. arrived and blocked Boyd's vehicle. M.S. also threatened to cut Boyd's dog and retrieved a knife from his pocket. Boyd stepped back a little and "was like shocked." M.S. approached Boyd with the knife. The situation turned "volatile." The argument continued but B.S. did not hear "word for word" what was said. Boyd was in shock, eventually got into his pickup truck, and "jockeyed out of the situation" to avoid M.S.'s and J.R.'s vehicles. B.S. did not see M.S. or J.R. trying to stop Boyd from leaving the scene. B.S. left shortly afterwards because he "was fearful about the situation . . . . But [ ] Boyd seemed like he had it under control after he got in his truck." B.S. also felt Boyd's life was in danger during the incident. Upon reuniting with

6

Boyd, B.S. asked whether he would do anything about the incident. Boyd replied, "Don't worry about it." B.S. never reported the incident to the police.

*Jury Deliberations*

During deliberations, the jury sent the court a note requesting readbacks of "[M.S.'s] testimony specifically regarding his thoughts on the dog and the threats of shooting the gun"; "[J.R.'s] testimony specifically regarding his thoughts on the dog and the threat of shooting"; and M.S.'s 911 phone call.

DISCUSSION

I. *Prior Crime Testimony*

Evidence Code section 1101, subdivision (a) prohibits admission of "evidence of a person's character . . . to prove his or her conduct on a specified occasion." Evidence Code section 1101, subdivision (b) authorizes admission of such evidence in a criminal action if offered by the defendant when relevant to prove some fact such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. (See *Butler v. LeBouef* (2016) 248 Cal.App.4th 198, 205.) Boyd correctly notes that none of the court's proffered reasons for admitting evidence of his prior robbery under Evidence Code section 1101, subdivision (b) was present in the instant case: he was not charged with robbery or theft, his identity was not at issue, and no common scheme or plan existed.[4]

---

[4] We regard as forfeited Boyd's unsupported and summary contention that "the trial court failed to give weight to the fact that the [prior robbery] incident was more than ten years old and that only fuel smell and proximity to a construction cite [*sic*] linked [Boyd] to any purported fuel theft." (See *People v. Hardy* (1992) 2 Cal.4th 86, 150 [appellate courts need not address an issue mentioned only briefly and without supporting authority].)

"We review the trial court's decision whether to admit evidence, including evidence of the commission of other crimes, for abuse of discretion." (*People v. Harris* (2013) 57 Cal.4th 804, 841.)

*Analysis*

The jury in the instant case was confronted with two conflicting accounts of what occurred between Boyd and the victims. The admission of the prior crime evidence permitted the jury to conclude that Boyd committed a bad act before, and therefore had a propensity to commit such crimes. We conclude that the court abused its discretion, as the prior robbery evidence was irrelevant because Boyd was not charged with robbery but rather with making criminal threats. Moreover, our review of the entire record persuades us that the court's error in admitting the prior crime evidence was prejudicial and inflammatory under Evidence Code section 352. The deputy sheriff was permitted to describe discovering Boyd, who was engaged in the act of committing the fuel robbery in 2008, and identify Boyd in court.

Contrary to the court's assertions, Boyd's identity was never at issue. Further, because Boyd was charged with making criminal threats, there was no common plan with the 2008 incident as the court asserted. The California Supreme Court has stated, "In order to be relevant as a common design or plan, 'evidence of uncharged misconduct must demonstrate "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." ' [Citation.] We have explained that 'the common features must indicate the existence of a plan rather than a series of similar spontaneous acts,' and that 'evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially

8

that the defendant committed the charged offense pursuant to the *same* design or plan he or she used in committing the uncharged acts.' " (*People v. Catlin* (2001) 26 Cal.4th 81, 111.) There is simply no basis for a conclusion that Boyd's 2008 robbery conviction was part of a plan that included his making of criminal threats in April 2017. Accordingly, we conclude the People did not show that evidence of Boyd's prior crime was admissible under Evidence Code section 1101, subdivision (b).

Boyd correctly points out the prosecution "capitalized on [the] prejudicial prior incident" in closing arguments to the jury. Specifically, the prosecutor argued: "Other acts evidence. In 2008 you heard that [Boyd] was caught red-handed at that time by Carlsbad Police doing the same thing. Why is that important? Because that shows you that this was not some mistake. Or some just situation [*sic*] where if you could only see both sides of the story you would understand. That is not here [*sic*]. Because how in the world could [M.S.] and [J.R.] have come up with such a unique crime like stealing diesel fuel from a construction tank. They didn't just come up with that. That is because that is what [Boyd] was doing. And if he was doing that, then what follows is everything else that [M.S.] and [J.R.] told you. That he was confronted on the site, [Boyd] was. That he tried to get away. And he threatened to do those things to [M.S.] and [J.R.]." But this court has stated: "As a general rule, the courts have interpreted Evidence Code section 1101 as not permitting introduction of uncharged prior acts *solely* to corroborate or bolster the credibility of a witness." (*People v. Brown* (1993) 17 Cal.App.4th 1389, 1396.) We also point out that as Boyd did not testify at trial, the deputy sheriff's testimony regarding the prior crime evidence was not admissible for impeaching Boyd's credibility.

9

Because the jury requested readbacks of the testimony presented by the prosecution's two witnesses and of the 911 call, we believe it likely that absent the prior crime evidence, at least one juror might have decided to acquit, and thus it is reasonably probable there would have been a hung jury, a more favorable result for Boyd. (*People v. Soojian* (2010) 190 Cal.App.4th 491, 520 [Where a criminal defendant has been found guilty, "a hung jury is considered a more favorable result than a guilty verdict"].)

We reject the People's argument that Boyd forfeited his Evidence Code section 1101 claim. They point out that when the prosecutor moved to admit Boyd's prior crime, defense counsel stated, "I get there might [*sic*] an [Evidence Code section] 1101[, subdivision] (b) [issue], but I encourage the Court to be [*sic*] a[n Evidence Code section] 352 analysis." Under the applicable law set forth above, any review of this claim necessarily requires an analysis of whether the admission of the prior crime evidence was more probative than prejudicial under Evidence Code section 352. (See *People v. Williams* (2018) 23 Cal.App.5th 396, 417 [" 'Although a prior criminal act may be relevant for a noncharacter purpose to prove some fact other than the defendant's criminal disposition, the probative value of that evidence may nevertheless be counterbalanced by a[n Evidence Code] section 352 concern.' "].)

The People further argue, "Even though the prosecution did not charge [Boyd] with stealing fuel, the evidence showing that he was trying to siphon fuel explains his motive for, and intent to, threaten [M.S.] and [J.R.]. The evidence that [Boyd] had previously siphoned fuel from another construction site and then fled the scene to avoid arrest further supported the prosecution's claim that the reason why appellant threatened [M.S.] and [J.R.] was because he had tried to steal fuel in this case and wanted to avoid

10

arrest for his most recent offense as well." The People overlook that the robbery charges were dismissed from the original pleading upon the granting of the section 995 motion.

II. *Sufficiency of the Evidence Challenge to the Criminal Threat Convictions*

Boyd contends there is insufficient evidence to show he made "clear and immediate threats" or that M.S. and J.R. experienced "sustained fear" within the meaning of section 422. He specifically contends: "First, [his] statements were conditional and made only so that [M.S. and J.R.] would allow [him] to leave the area so that the situation would not escalate to a higher level. Second, while [J.R.] testified that at the moment [M.S.] was talking with him he [*sic*] was afraid, there is no indication that either [M.S. or J.R.] suffered a sustained fear as required by the statute." We address this claim for purposes of determining the People's right to retry the charges after remand, and conclude sufficient evidence supports them.

A. *Applicable Law*

To establish a violation of section 422, the People must prove " ' "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety . . .' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." ' "
(*People v. Culbert* (2013) 218 Cal.App.4th 184, 189, quoting *In re George T.*

11

(2004) 33 Cal.4th 620, 630.) "[A]ll of the surrounding circumstances should be taken into account to determine if a threat falls within the proscription of section 422. This includes the defendant's mannerisms, affect, and actions involved in making the threat as well as subsequent actions taken by the defendant. The courts have taken this approach in order to further the legislative intent behind the statute." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013.)

Sustained fear refers to a state of mind; the word fear "describes the emotion the victim experiences." (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) This element is satisfied where there is evidence that the victim's fear is more than "momentary, fleeting, or transitory" (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156); it may be found when the evidence shows the victim's fear is not " 'instantly over.' " (*People v. Culbert*, *supra*, 218 Cal.App.4th at p. 191.) No specific time period is required; even one minute of fear can be sustained if a person is confronted with what he believes is a deadly weapon and believes he is about to die. (*Fierro*, at p. 1349 ["[W]e believe that the minute during which [the victim] heard the threat and saw [appellant's] weapon qualifies as 'sustained' under the statute. When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.' "].)

B. *Analysis*

The record shows that during a heated exchange in which Boyd became "aggressive" and "just went nuts," he made criminal threats to harm the victims in three separate ways: to knock down J.R., to shoot the men, and to unleash his dog to attack them. Both victims testified they experienced fear and took the threats seriously. The context for the criminal threats, which added power and urgency to Boyd's words, was that M.S. had caught Boyd

12

taking fuel without permission.  Interpreting Boyd's words from all the surrounding circumstances, a factfinder could reasonably find that the victims believed Boyd sought to escape accountability for his conduct.  This created a volatile situation and the victims reasonably believed Boyd would harm them.  They subjectively and objectively experienced fear that their lives were endangered.  J.R. specifically testified he told M.S. it was not worth detaining Boyd because the risk was too great.  Finally, a factfinder could reasonably conclude both victims experienced sustained fear.  J.R. testified that he "continued" to experience fear after Boyd's threats, in part because of the construction site's location and the fact it was a weekend and no one else was in the area that day.  M.S. testified that after Boyd left he had to "collect" his thoughts before calling the police, which he did approximately ten minutes later.

As stated, the People are not barred from seeking a new trial on the charged counts.  "As a general rule, it is well established that if the defendant secures on appeal a reversal of his conviction based on trial errors other than insufficiency of evidence, he is subject to retrial."  (*People v. Hernandez* (2003) 30 Cal.4th 1, 6.)

## DISPOSITION

The judgment is reversed.

O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


GUERRERO, J.