[No. F044541. Fifth Dist. Dec. 21, 2004.]

BRUCE LYNN SONS, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Sullivan & Cromwell, Robert A. Sacks, Michael H. Steinberg, Wendy P. Harper, Justin P. Gurvitz; and Michael E. Dellostritto for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Janis Shank McLean and David A. Rhodes, Deputy Attorneys General, for Real Party in Interest.

OPINION

**VARTABEDIAN, Acting P. J.**—Bruce Lynn Sons seeks a writ of prohibition to prevent retrial of murder charges against him after his federal habeas corpus petition succeeded in vacating his conviction based on the stipulation Sons had been denied his constitutional right to a fair trial. Petitioner Sons contends that, because the prosecutor knowingly failed to disclose material exculpatory evidence in the first trial, retrial is barred by the double jeopardy clauses of the federal and state Constitutions and by constitutional requirements of due process of law. We conclude retrial is not barred on any basis Sons has asserted. Accordingly, we deny the petition for writ of prohibition.

### Facts and Procedural History

The summary of evidence contained in our opinion in Sons's direct appeal of his conviction comprises approximately 45 pages. (See *People v. Sons* (Mar. 23, 1999, F023776) [nonpub. opn.].) The further discussion of the various issues in that appeal comprises another 115 pages. No purpose would be served by an attempt here to provide a comprehensive summary of the underlying facts and the issues on appeal. For purposes of the present proceeding, an extremely brief summary will provide a sufficient basis for our discussion.

In 1994, California Highway Patrol Officer Richard Maxwell detained Sons for investigation of auto theft. The detention occurred after Maxwell followed Sons's vehicle onto the residential premises of his father. The confrontation quickly escalated and Maxwell apparently opened fire on Sons. Sons shot back and killed Maxwell.

Sons was charged with murder; the prosecution sought the death penalty. The primary issue at the guilt phase trial was whether Maxwell was unjustified in opening fire on Sons and, therefore, whether Sons's shots in response were in self-defense. The state of the evidence at the guilt phase permitted the prosecutor to argue to the jury that Sons was aggressive in previous traffic stops conducted by other highway patrol officers, but that Maxwell was a "professional officer that everybody liked . . . [and] was quiet, professional, did his job . . . ."

The jury convicted Sons of first degree murder but found against the death penalty.

In a 2000 habeas corpus action in federal court, the Attorney General stipulated that the state "[would] not contest or deny that a violation of [Sons's] federal constitutional right to a fair trial had occurred. The parties do not agree on, and are free to contest, how the constitutional violation occurred, and the specific facts underlying the constitutional violation[.]" The federal court vacated the judgment, Sons remained in prison, and the matter was calendared for retrial.

As permitted by the stipulated judgment of the federal court, Sons moved the superior court to bar retrial of the case based on principles of double jeopardy and due process. The court held an extensive evidentiary hearing. It came to light that Maxwell had, on two occasions, been disciplined for drawing his weapon on civilians in inappropriate circumstances. His superior officer had determined that Maxwell was developing an unacceptable pattern of conduct in this regard and had placed a letter of reprimand in Maxwell's personnel file. It also came to light that the prosecutor knew this information at the time of trial and failed to disclose it to the defense.

The trial court concluded the original prosecutor had committed "serious and indefensible" misconduct in withholding exculpatory evidence at the original trial and exploiting the absence of such evidence in his argument to the jury. However, the court denied the motion to dismiss on double jeopardy grounds because Sons failed to prove the prosecutor's misconduct "was perpetrated with specific objective of avoiding an acquittal that the prosecutor viewed as likely," citing *People v. Batts* (2003) 30 Cal.4th 660, 695–696 [134 Cal.Rptr.2d 67, 68 P.3d 357] (hereafter *Batts*) and federal double jeopardy

cases. The court denied the motion to dismiss on due process grounds because "the Defendant's Due Process Rights can be satisfied by virtue of a new trial."

Sons filed a petition for writ of prohibition, seeking dismissal on the two grounds asserted in the trial court. This court eventually issued an order to show cause why the petition should not be granted. The parties have filed further briefing and have presented oral argument. Proceedings in the trial court have been stayed pending our consideration of the petition.

## Discussion

### A. *Double Jeopardy.*

Sons acknowledges there are no California cases barring retrial in the circumstances before us. He argues, however, that the same principles that prohibit retrial when the prosecutor intentionally causes a mistrial should prohibit retrial when the prosecutor intentionally procures a conviction through misconduct. (See *State v. Minnitt* (2002) 203 Ariz. 431 [55 P.3d 774].)

The California Supreme Court recently addressed the mistrial situation in *Batts*. In that case, a prosecution witness had been murdered between the first trial and the retrial of the case. There was an order barring the prosecution from mentioning the cause of death in conjunction with its presentation of the witness's testimony from the first trial. The jury simply was informed the witness was unavailable. On cross-examination of a police witness, however, defense counsel successfully implied the witness was unavailable because the police had paid him to go away. On redirect, the prosecutor intentionally violated the court's earlier order by soliciting the true cause of the witness's unavailability. (*Batts, supra,* 30 Cal.4th at p. 670.)

The defendant moved for a mistrial. The prosecutor opposed the motion, contending his actions had been justified by the conduct of defense counsel. The trial court granted the mistrial. (*Batts, supra,* 30 Cal.4th at pp. 671–672.)

When the case again was brought for trial, defense counsel moved for dismissal on double jeopardy grounds. The trial court denied the motion because, under *Oregon v. Kennedy* (1982) 456 U.S. 667 [72 L.Ed.2d 416, 102 S.Ct. 2083], retrial is prohibited only where the prosecutor has acted with the intent to provoke a mistrial. In the case before it, the trial court concluded, the state of the evidence favored the People and the prosecutor did not want a mistrial—he merely wanted to rebut the false impression created during

cross-examination. Accordingly, the court permitted retrial and the defendant was convicted. (*Batts, supra,* 30 Cal.4th at pp. 674–675.)

The Court of Appeal reversed, holding that retrial was barred on double jeopardy grounds. (*Batts, supra,* 30 Cal.4th at p. 676.) On petition for review, the Supreme Court reversed the Court of Appeal. In doing so, it addressed in detail the double jeopardy clause of the federal and the state Constitutions.

■ The Supreme Court held that the California Constitution, article I, section 15, provides double jeopardy protection somewhat broader than that provided by the Fifth Amendment to the federal Constitution: "First, as under the federal Constitution, retrial is barred by the state double jeopardy clause when the prosecution intentionally commits misconduct for the purpose of triggering a mistrial. Second, the state double jeopardy clause also may bar retrial when the prosecution, believing (in view of events that occurred during trial) that a defendant is likely to secure an acquittal at that trial, knowingly and intentionally commits misconduct in order to thwart such an acquittal. In the latter circumstance, however, retrial is barred under the state double jeopardy clause only if a court, reviewing all of the circumstances as of the time of the misconduct, finds not only that the prosecution believed that an acquittal was likely and committed misconduct for the purpose of thwarting such an acquittal, but also determines, from an objective perspective, that the prosecutorial misconduct deprived the defendant of a reasonable prospect of an acquittal." (*Batts, supra,* 30 Cal.4th at p. 666.) The court found the evidence in the case before it did not satisfy either requirement and remanded the matter to the Court of Appeal. (*Id.* at p. 697.)

In an introductory footnote to the *Batts* opinion, the court stated: "In this case, we have no occasion to address the proper application of the federal or state double jeopardy clauses in the related but distinct circumstance in which prosecutorial misconduct results not in a mistrial, but rather in the reversal of a conviction on appeal." (*Batts, supra,* 30 Cal.4th at p. 665, fn. 1.) In its discussion of the issues before it, however, *Batts* clearly sets forth the path we must take in resolving the issue reserved in *Batts,* one version of which is squarely presented by the present case.

To determine the scope of the state Constitution's double jeopardy clause, the *Batts* court examined the approach taken by other states that have expanded the protection beyond that afforded under the federal Constitution. (*Batts, supra,* 30 Cal.4th at pp. 690–691.) The court noted that some courts have adopted tests that bar retrial when a conviction is reversed because of egregious prosecutorial misconduct. (*Id.* at p. 690.) Those courts have essentially articulated due process reasons for imposing the double jeopardy bar to reprosecution in the case of flagrant misconduct. (See *ibid.*) The *Batts*

court rejected this standard, however, because none of the tests "articulates explicitly the precise *double jeopardy basis* for a conclusion that the principles underlying a defendant's double jeopardy interest have been violated." (*Id.* at p. 691.)

■ Instead, *Batts* requires "a standard that sufficiently protects double jeopardy interests, but also retains and enforces a distinction between 'normal' prejudicial prosecutorial misconduct that violates a defendant's due process right to a fair trial and warrants reversal and retrial, and the form of prosecutorial misconduct that not only constitutes a due process violation but also a double jeopardy violation, and hence warrants not only reversal but dismissal and a bar to reprosecution." (*Batts, supra,* 30 Cal.4th at p. 692.) In other words, a bar to retrial is not based upon the degree or severity of the misconduct, but upon the effect of the misconduct on those interests of the defendant that the double jeopardy clause seeks to protect.

Accordingly, we examine the underlying interests protected by double jeopardy prohibitions. Those have been identified by the United States Supreme Court as follows: "(1) protecting the defendant from being subjected to the embarrassment, expense, ordeal, and anxiety of repeated trials, (2) preserving the finality of judgments, (3) precluding the government from retrying the defendant armed with new evidence and knowledge of defense tactics, (4) recognizing the defendant's right to have trial completed by a particular tribunal, and (5) precluding multiple punishment for the same offense." (*People v. Hernandez* (2003) 30 Cal.4th 1, 8 [131 Cal.Rptr.2d 514, 64 P.3d 800], citing *United States v. DiFrancesco* (1980) 449 U.S. 117, 127–129 [66 L.Ed.2d 328, 101 S.Ct. 426].)

■ It is apparent that the first and third items in the foregoing listing are not protected by the double jeopardy clauses through the mechanism of barring retrials. These somewhat generalized "fairness" concerns are, in the usual case, sufficiently addressed through a fair retrial with appropriate sanctions or restrictions on the prosecution. Barring retrial to address these concerns is deemed too high a price for society to pay for "trial error." (See *People v. Hernandez, supra,* 30 Cal.4th at p. 8.) ■ And the fifth item in the listing involves not retrials, but second trials after valid convictions. In our analysis, only the second and fourth interests listed above, to which we turn next, are core interests protected by the double jeopardy bar on retrials.

Double jeopardy protection, in the context of acquittal or mistrial, serves two primary interests. First, and most obviously, a criminal defendant has a protected interest in the finality of an acquittal (hereafter, the "finality" interest). (*People v. Hernandez, supra,* 30 Cal.4th at p. 8.) Second, a defendant has a more limited interest in having his or her trial completed by

the particular jury impaneled to hear the case (hereafter, the "first jury" interest). (*Id.* at pp. 8–9.) This latter interest is in part a variation of the "finality" interest: the defendant is entitled to the benefit of the prosecution's unpreparedness or missteps at trial (which might result in acquittal) (see *Batts, supra,* 30 Cal.4th at p. 679) and the prosecution cannot deprive defendant of that benefit by its intentional misconduct. The "first jury" interest is limited, however, in that a mistrial caused by "manifest necessity," a hung jury, for example, as opposed to intentional conduct by the prosecutor, does not bar retrial. (*Ibid.*)

▪ Under existing law, we reiterate, the "first jury" interest is limited to situations resulting in mistrial: For purposes of the federal Constitution, when a mistrial has been granted at the request of the defendant, retrial is barred—that is, the "first jury" interest is afforded double jeopardy protection—only when the prosecution commits misconduct for the purpose of causing a mistrial. (See *Oregon v. Kennedy* (1982) 456 U.S. 667, 679 [72 L.Ed.2d 416, 102 S.Ct. 2083].) Under California double jeopardy precedent, the "first jury" interest also merits double jeopardy protection when the prosecution, perceiving that the defense has gained an advantage likely to lead to acquittal, commits misconduct directed at thwarting an acquittal by obtaining a conviction, where the misconduct instead results in a mistrial. (*Batts, supra,* 30 Cal.4th at p. 695.) The protected interest under state double jeopardy law is limited by the further requirement that a court may bar retrial on double jeopardy grounds only if it finds that, objectively, the defendant had a reasonable prospect of acquittal when the prosecution committed the misconduct. (*Ibid.*)

▪ In the present case, Sons was not acquitted by the jury, so the "finality" interest is not implicated. Nor was a mistrial declared, directly implicating the "first jury" interest. Instead, Sons was convicted. ▪ As a general rule, when there is a conviction, rather than an acquittal or a mistrial, and the judgment of conviction is reversed on appeal or vacated in habeas corpus proceedings due to error in the trial, retrial is permitted.[1] Retrial merely " 'affords the defendant a second opportunity to seek a favorable judgment' " and does not constitute double jeopardy. (*People v. Hatch* (2000) 22 Cal.4th 260, 271–274 [92 Cal.Rptr.2d 80, 991 P.2d 165].) When a writ of habeas corpus vacates a judgment, the parties are placed in the same position as if the first trial had never occurred, and defendant is not in jeopardy until the retrial jury is sworn. (*In re Cruz* (2003) 104 Cal.App.4th 1339, 1350 [129 Cal.Rptr.2d 31].)

---

[1] The primary exception to this general rule is that retrial is barred if the evidence admitted at trial was legally insufficient to support a conviction. (See *Burks v. United States* (1978) 437 U.S. 1, 18 [57 L.Ed.2d 1, 98 S.Ct. 2141].)

Notwithstanding the general rule, Sons contends that the double jeopardy interest in having the trial completed before the initial jury is implicated when the prosecution, in violation of defendant's right to receive exculpatory evidence known to the prosecution (see *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]), determines to suppress that evidence in order to enhance its prospects for obtaining a conviction, and conducts the trial in accordance with that determination, wrongfully obtaining a conviction.

Sons's argument is based on the California Supreme Court's reliance in *Batts* on a federal case that stated retrial might be barred when a conviction is produced by misconduct if the prosecution acts during trial in order to prevent an acquittal but does not seek to provoke a mistrial. (*Batts, supra,* 30 Cal.4th at p. 695, citing *U.S. v. Wallach* (2d Cir. 1992) 979 F.2d 912, 916–917.) In essence, the rationale of this and similar cases is that the prosecution should not be able to secure a retrial by hidden misconduct, if that same conduct would result in a mistrial (and therefore bar retrial) if known by the defense before a verdict is returned. (See *Batts* at p. 694.)

■ We perceive controlling distinctions between the midtrial misconduct discussed in *Batts* and *Wallach,* on the one hand, and the pretrial suppression of evidence by the prosecution in the present case. Those distinctions go not to the seriousness of the prosecution's misconduct (for we recognize the pervasive and intentional misconduct in the present case), but to the nature of the remedy to which the defendant is entitled. We reach this conclusion because, as discussed above, *Batts* instructs that we must determine whether there is a double jeopardy interest impinged upon by the misconduct, not simply whether unfairness, however gross, has resulted. (See *Batts, supra,* 30 Cal.4th at pp. 691–692.)

In determining whether a double jeopardy interest is implicated in the present case, we observe that, at the point the prosecution decided to suppress the exculpatory evidence in this case, no jury had been impaneled. As a result, the prosecution had no reason for concern that the jury that would be impaneled would be any more likely to acquit the defendant than any other potential jury. After a jury is impaneled (as in *Batts* and *Wallach*), by contrast, any number of events can cause a prosecutor to believe the present jury is more likely to acquit than another jury might be. Thus, during a trial, the jury's collective demeanor could cause a prosecutor to believe the jury is not "buying" the prosecution's case, an important witness may not perform as well as expected, or unexpected evidence could undermine the prosecution's case. In any of these instances, the prosecutor may have a concrete concern that the present jury is headed toward an unreviewable judgment of acquittal and act to thwart the defendant's "finality" interest in that acquittal. Here, the

prosecutor may well have developed a concern that this particular jury might acquit as deliberations extended day after day. He did not, however, commit misconduct in response to this concern; he committed it long before the trial began. Thus, the record supports an inference that the prosecutor committed misconduct because he was concerned he could not convict Sons and obtain a death verdict if he did not suppress the adverse evidence. But the record does not support the different and crucial inference that he acted in order to prevent an acquittal.

It is also significant that the interest protected in this "first jury" facet of double jeopardy protection is not the defendant's interest in a fair trial. (Thus, in *Batts*, the court emphasized that the defendant did *not* receive a fair trial but his remedy was retrial, not dismissal of the charges (*Batts*, *supra*, 30 Cal.4th at p. 697).) The goal, in a sense, is to the contrary: it is to preserve to the defendant an advantage gained during trial even if that advantage is unfair—unfair to the prosecution, that is—just as double jeopardy protection preserves, for example, a jury-nullification acquittal that may be unfair to the People. (See *id.* at p. 679 & fn. 12.)[2]

Finally, we note that in cases addressing the insufficiency-of-evidence bar to retrial, the insufficiency is measured against the evidence actually admitted at trial, even if the evidence was wrongly admitted. (*Lockhart v. Nelson* (1988) 488 U.S. 33, 40–42 [102 L.Ed.2d 265, 109 S.Ct. 285].) In the insufficient-evidence cases that bar retrial, the rationale is that the jury *was required as a matter of law* to acquit on the state of the evidence before it, and the appellate court is merely doing what the jury was required to do. (*Id.* at p. 39.) Because the required acquittal would bar retrial, such a bar also results from appellate "acquittal." In the cases in which the properly admitted evidence was insufficient but the erroneously admitted evidence was sufficient, the state of the evidence did not require acquittal as a matter of law, so the resulting reversal is not conceptually equivalent to a jury acquittal. (See *id.* at p. 42.) In the present case, the suppressed evidence would not have required acquittal as a matter of law. Clearly the evidence was relevant and very dangerous to the prosecution, but it still was the kind of evidence a jury could weigh and could discount in determining that, whatever Maxwell's previous failings, he was murdered by Sons.

We conclude that the suppression of evidence by the prosecution, and the subsequent argument to the jury based on the absence of such evidence, was

---

[2] In a broader sense, double jeopardy protection seeks to preserve fairness in the criminal justice system by preventing oppressive multiple prosecutions, but the protection is not directed to the issue of fairness in the conduct of a particular trial. Instead, fairness in a particular trial is protected primarily by principles of due process, which we address in the next part. (See *Batts, supra*, 30 Cal.4th at p. 697.)

not directed to, nor did it result in, deprivation of Sons's right to a verdict by the first jury impaneled. That is the sole double jeopardy interest involved in *Batts* and *Wallach*, and Sons has not suggested any other double jeopardy interest involved in the present case. We conclude retrial is not barred by the state or federal double jeopardy clause.

In reaching this conclusion, we do not fully address the issue left open in *Batts*: we do not, for example, address the issue of covert misconduct during the trial—that is, misconduct intended to prevent an acquittal the prosecutor perceives as likely—that results in a conviction rather than a mistrial solely because the misconduct was discovered after the verdict. We address only misconduct of the type contained in this record: misconduct intended to secure a conviction, not to prevent an acquittal.

B. *Due Process.*

Sons's due process claim is limited, at this stage of the case, to a contention that due process requires, as a matter of law, dismissal of the charges against him. That is, he recognizes that the trial court is vested with discretion to impose sanctions and restrictions on the prosecution at retrial, including dismissal of the charges, but he contends the only sufficient sanction in this case is dismissal.

Such a holding would conflict with the Supreme Court's determination in *Batts* that misconduct, even flagrant misconduct, ordinarily is corrected by a fair retrial. (See *Batts, supra,* 30 Cal.4th at pp. 690–691.) At some point, the trial court may find it necessary to determine, as this case unfolds on retrial, that evidentiary and instructional sanctions on the prosecution are insufficient to secure Sons a fair trial. Sons is permitted to renew his motion to dismiss and for other sanctions, on due process grounds, throughout the retrial. He is not, however, entitled as a matter of law to dismissal on due process grounds at this stage of the proceedings.

### Disposition

The petition for writ of prohibition is denied on the merits, including as to any issues not expressly discussed in the opinion, and the order to show cause is discharged. The stay of proceedings in the trial court is vacated.

Harris, J., and Levy, J., concurred.

Petitioner's petition for review by the Supreme Court was denied March 30, 2005.