[No. C064531. Third Dist. Feb. 13, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
GENE WHITAKER, JR., et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

## Counsel

Mark David Greenberg, Cara DeVito and Hilda Scheib for Defendants and Appellants.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John A. Bachman, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DUARTE, J.**—This appeal arises after the two-jury trial of Gene Whitaker, Jr., his son, Gene Whitaker, III, and Dewayne Presley.[1]

Presley and Whitaker III beat and tried to shoot Melvin Weathers at the behest of Whitaker, in retaliation for a prior incident in which Weathers had broken Whitaker's jaw. Presley and Whitaker III, and a broken rifle, were found near the scene. Whitaker's sister, Beverly Robinson, reported that Whitaker had "hyped" up the other defendants into attacking Weathers. Each defendant was a member of the East Side Piru gang. Each defendant was convicted of attempted premeditated murder and other charges, and each received a life sentence.

After the first jury was selected, the trial court delayed swearing in the jury, pending resolution of prosecution witness problems. When those problems were resolved adversely to the People, they moved to dismiss the case for lack of evidence. The trial court granted the motion, and the People later refiled the charges. Defendants then moved to dismiss the refiled charges, contending that allowing the People to refile the charges improperly thwarted

---

[1] The record confusingly refers to Gene Whitaker, Jr., as "Sr." or "G," and to Gene Whitaker III as "Jr." or "Little G." We refer to the former as Whitaker and the latter as Whitaker III.

double jeopardy protections, and violated due process principles. The trial court denied the defendants' motions, and the jury trial ensued.

In the published portion of this opinion (pt. I), we first describe the events leading to the dismissal of defendant's first case. Then, as we explain, we assume the trial court erred in finding good cause to delay swearing in the first jury, but conclude that this error does not require reversal of the convictions arising from the jury verdicts, because defendants have not suffered a double jeopardy or due process violation.

In the unpublished portion of this opinion (pt. II), we describe the facts relevant to the jury trial from which defendants' appeals were taken, and reject all other contentions raised. However, we have discovered an error in the abstracts of judgment that must be corrected as to each defendant. Accordingly, we shall affirm the judgments and direct the trial court to prepare corrected abstracts of judgment.

## DISCUSSION

### I

### *Double Jeopardy and Due Process*

#### A. *Background*

Defendants initially were charged in *People v. Whitaker* (Super. Ct. Sacramento County, 2008, No. 07F11992).

November 6, 2008, was the last day to bring the case to trial, because none of the defendants had waived time. (See Pen. Code, § 1382.)[2] The People announced "ready" for trial, and the case was assigned to the first trial court.

When the trial court asked if the People had any matters to be heard, the People replied that they wanted the trial deemed "commenced" to avoid a speedy trial dismissal, and the parties agreed the trial had indeed commenced.[3] Later, the People conceded that Weathers had not been subpoenaed, but stated they would seek to have Weathers's prior testimony admitted. The

---

[2] Further date references are to 2008 unless otherwise specified. Further undesignated statutory references are to the Penal Code.

[3] For purposes of section 1382, providing a statutory speedy trial right, trial begins when elements "vital to undertaking a trial be present" and the parties are " 'ready to proceed.' " (*People v. Hajjaj* (2010) 50 Cal.4th 1184, 1196–1197 [117 Cal.Rptr.3d 327, 241 P.3d 828]; see *Perryman v. Superior Court* (2006) 141 Cal.App.4th 767, 776 [46 Cal.Rptr.3d 306] (*Perryman*) [trial begins "when jeopardy attaches . . . or when the litigation of contested issues otherwise

trial court lifted the stay of a bench warrant for Robinson, who had been subpoenaed and failed to appear.

On November 12, the People moved in limine to introduce the preliminary hearing testimony of Weathers and Robinson, and the defense sought discovery of efforts made to locate them. The prior testimony could be admitted if and only if the People showed those witnesses were "unavailable," which turned on whether the People "exercised reasonable diligence" to ensure their appearance. (Evid. Code, § 240, subd. (a)(5); see *id.*, § 1291, subd. (a)(2); *People v. Bunyard* (2009) 45 Cal.4th 836, 849 [89 Cal.Rptr.3d 264, 200 P.3d 879].)

On Thursday, November 13, the People stated a diligence report would be ready the next court day, Monday, but the defense objected and sought a "live" hearing on diligence. The trial court directed the clerk to have a panel of jurors available on Monday morning.

On Monday, November 17, after the People filed a fourth amended information, the trial court asked if there was "any matter" to address before jury selection, the People said there was not, and jury selection began. Later, defense counsel acknowledged receipt of discovery on diligence.

On Wednesday, November 19, the People presented to the court a deputy's testimony about efforts to find Robinson. Without objection, the trial court continued the diligence hearing to "the most convenient opportunity that we have after we either select the jury or during jury selection." Jury selection continued that day.

On Thursday, November 20, the jurors and alternates were selected but not sworn. The People announced they had additional witnesses to present regarding diligence, and defense counsel referred to an earlier objection to the court's failure to swear the jury. The People's witnesses testified about efforts to locate Robinson and Weathers, and the trial court heard argument on the People's motion.

On Friday, November 21, after the People recalled one witness, the trial court found the People had not shown adequate diligence with respect to either Weathers or Robinson, and denied the People's motion to allow the witnesses' prior testimony to be introduced at trial.

On Monday, November 24, the People moved to dismiss the case for insufficiency of the evidence, in light of the trial court's evidentiary ruling.

begins"].) Had the trial not been deemed started at that time, the People would have had to show good cause for a continuance to secure their witnesses. (*Perryman, supra*, 141 Cal.App.4th at pp. 777–778.)

(See § 1385.)[4] One defense counsel objected that the dismissal should be with prejudice, alleging the People were "Judge shopping." Another defense counsel stated: "We objected to the lack of swearing in of the jurors . . . prior to the selection of the alternates, and we continue to believe that jeopardy should have attached last week."

The trial court stated it had found "good cause not to swear the jury upon their selection, nor the alternates. [¶] The Court was well aware, as were all counsel, that the People were attempting in various ways to secure the presence of the victim, Lamont Weathers and . . . witness Beverly Robinson. [¶] We had not yet concluded the diligence hearing, so there was no firm evidence of what efforts had been discharged by the People in that regard. [¶] So the Court, with that scenario, found there was sufficient cause not to swear the jury." The trial court also stated it had been "anticipating" that the People might not show due diligence.

The trial court granted the motion to dismiss, and later thanked and excused the jurors.

The People refiled the charges on November 26; a second trial court presided over the refiled case.

Each defendant entered a plea of once in jeopardy, moved to dismiss raising due process and double jeopardy grounds, and later raised those issues in their new trial motions. The defense argued the first trial court should not have delayed swearing the jury to allow the People "time to fix the problems in their case" and then allow them to dismiss and refile after they failed to fix those problems. Instead of seeking a continuance before jury selection began (see fn. 3, *ante*), when the People "declared ready, for all purposes, [they] took] the risk that [they] would not be able to get [their] witnesses." As a result, defendants were subjected to increased incarceration and lost the opportunity to have that first jury "decide their fate with the evidence that was available to the People at the time, which . . . they admit was absolutely nothing."

The People's consistent response was that jeopardy had not attached, and that the first trial court "knew exactly what he was doing in not swearing [in] the jury. He was taking things in a certain order, well within [his] rights."

---

[4] Insufficient evidence is a valid ground for a section 1385 dismissal, as is a dismissal to allow the People to secure further witnesses. (See *People v. Hatch* (2000) 22 Cal.4th 260, 268–271 [92 Cal.Rptr.2d 80, 991 P.2d 165]; *People v. Orin* (1975) 13 Cal.3d 937, 946 [120 Cal.Rptr. 65, 533 P.2d 193].)

The second trial court denied the various defense motions, finding that jeopardy had never attached.[5]

## B. *Analysis*

Before analyzing the specific defense contentions, we first review some general rules about double jeopardy.

■ "The Fifth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment [citation], protects defendants from repeated prosecution for the same offense [citations], by providing that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb. . . .' " (*Batts, supra,* 30 Cal.4th at p. 678.) The California Constitution contains a similar provision. (Cal. Const., art. I, § 15 ["Persons may not twice be put in jeopardy for the same offense."].)

In *Downum v. United States* (1963) 372 U.S. 734 [10 L.Ed.2d 100, 83 S.Ct. 1033] (*Downum*), the parties "announced ready" but, after the jury was sworn, the prosecutor asked for it to be discharged because a witness could not be found. The trial court discharged the jury, and later overruled a plea of former jeopardy. (*Downum, supra,* 372 U.S. at p. 735 [10 L.Ed.2d at p. 102].) In reversing the judgment, *Downum* endorsed a Ninth Circuit case on similar facts, holding " 'The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. . . . The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict.' " (*Id.* at p. 737 [10 L.Ed.2d at p. 102], quoting *Cornero v. United States* (9th Cir. 1931) 48 F.2d 69, 71.)

*Downum* has been characterized as involving "a particularly unpardonable fault of the prosecutor—unpreparedness." (Schulhofer, *Jeopardy and Mistrials* (1977) 125 U.Pa. L.Rev. 449, 466.) A later high court case described *Downum* as involving "a defective procedure that would lend itself to prosecutorial manipulation" and where the procedure "operated as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case." (*Illinois v. Somerville* (1973) 410 U.S. 458, 464, 469 [35 L.Ed.2d 425, 431, 434, 93 S.Ct. 1066].)

---

[5] We reject the People's claim that defendants were mounting an improper collateral attack on the first trial court's ruling. (Cf. *Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950–952 [126 Cal.Rptr. 805, 544 P.2d 941].) As defense counsel argued below, the second trial court had a duty to rule on the motions to dismiss, and was not merely reviewing the prior judge's rulings for error as such. By moving to dismiss, defendants preserved their claims. (See *People v. Batts* (2003) 30 Cal.4th 660, 676 [134 Cal.Rptr.2d 67, 68 P.3d 357] (*Batts*) [" 'a claim of double jeopardy is most appropriately raised by way of a pretrial motion to dismiss' "].)

■ Thus, it is clear that *had the jury been sworn*, the People would not have been able to legally refile the charges after successfully moving to dismiss them, because double jeopardy principles prevent "a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict." (*Green v. United States* (1957) 355 U.S. 184, 188 [2 L.Ed.2d 199, 204–205, 78 S.Ct. 221] (*Green*); see *State v. Stani* (App.Div. 1984) 197 N.J. Super. 146, 151 [484 A.2d 341, 343] ["the State may not retreat from the field when its case turns sour and then be permitted to sally forth on a future day before a new jury when its case is refreshed and reinforced"].)[6]

We now address defendants' specific claims of error.

### 1. *Abuse of Discretion*

We accept, for purposes of argument, defendants' view that the first trial court abused its discretion by delaying swearing the jury for reasons extrinsic to jury selection.

By statute, after all parties have exercised or passed exercising peremptory challenges, "the jury shall then be sworn, unless the court, for good cause, shall otherwise order." (Code Civ. Proc., § 231, subds. (d) & (e).) The trial court's discretion to find such good cause "will not be set aside absent a clear showing of abuse." (*People v. Niles* (1991) 233 Cal.App.3d 315, 320–321 [284 Cal.Rptr. 423] (*Niles*) [construing former § 1088].) Further, the trial court has the inherent discretionary power "To provide for the orderly conduct of proceedings before it." (Code Civ. Proc., § 128, subd. (a)(3); see *People v. Alvarez* (1996) 14 Cal.4th 155, 209 [58 Cal.Rptr.2d 385, 926 P.2d 365].)

But discretion is always delimited by applicable legal standards, a departure from which constitutes an "abuse" of discretion. (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298 [255 Cal.Rptr. 704]; see *County of Yolo v. Garcia* (1993) 20 Cal.App.4th 1771, 1778 [25 Cal.Rptr.2d 681] ["the range of judicial discretion is determined by analogy to the rules contained in the general law and in the specific body or system of law in which the discretionary authority is granted"].)

Certainly a problem *regarding jury selection* would provide good cause to delay swearing a jury. (See *People v. DeFrance* (2008) 167 Cal.App.4th 486,

---

[6] Of course, if a judge learns a juror is unfit, or for other reasons it is impossible for the trial to continue, the jury must be discharged and a retrial is permitted for " 'manifest necessity.' " (*Wade v. Hunter* (1949) 336 U.S. 684, 689–690 [93 L.Ed. 974, 978–979, 69 S.Ct. 834]; see *Batts, supra*, 30 Cal.4th at p. 679.)

We note a disagreement about the scope of *Green* in the recent divided decision in *Blueford v. Arkansas* (2012) 566 U.S. ___ [182 L.Ed.2d 937, 132 S.Ct. 2044], after a sworn jury failed to return verdicts. That issue is not germane here.

503–504 [84 Cal.Rptr.3d 204] (*DeFrance*) ["There was a real, substantive and objective need to reopen jury selection."]; *Niles, supra*, 233 Cal.App.3d at pp. 320–321 [no abuse of discretion in denying request to reopen to allow peremptory challenge, because the facts about the seated juror had been known before]; *People v. Griffin* (2004) 33 Cal.4th 536, 564–567 [15 Cal.Rptr.3d 743, 93 P.3d 344] (*Griffin*); accord, *In re Mendes* (1979) 23 Cal.3d 847, 851 [153 Cal.Rptr. 831, 592 P.2d 318] (*Mendes*) [after jury proper—but no alternates—sworn, juror excused after she advised that her brother died during the night, and the parties were permitted to select another juror].)

But here, the *sole* reason for not swearing the jury was to avoid the rule of *Downum, supra*, 372 U.S. 734 [10 L.Ed.2d 100], because the first trial court anticipated it might rule against the People on their evidentiary motion.

The People provide no authority upholding delay in swearing a jury for reasons *unrelated to jury selection*.

Generally, a trial court abuses its discretion by basing a discretionary decision on improper factors. (See, e.g., *People v. Sandoval* (2007) 41 Cal.4th 825, 847 [62 Cal.Rptr.3d 588, 161 P.3d 1146]; *People v. Carmony* (2004) 33 Cal.4th 367, 378 [14 Cal.Rptr.3d 880, 92 P.3d 369].) Accordingly, we shall assume for purposes of argument that the first trial court abused its discretion by basing its decision on a factor unrelated to jury selection.

### 2. Double Jeopardy

Assuming the first trial court erred by not timely swearing the jury, the result did not violate double jeopardy *as such*.

■ The United States and California high courts apply a bright-line rule: In a jury trial, jeopardy attaches *when the jury is sworn*. (*Crist v. Bretz* (1978) 437 U.S. 28, 37–38 [57 L.Ed.2d 24, 32–33, 98 S.Ct. 2156] (*Crist*); *People v. Riggs* (2008) 44 Cal.4th 248, 278, fn. 12 [79 Cal.Rptr.3d 648, 187 P.3d 363] (*Riggs*) ["once a jury has been sworn, jeopardy has attached . . ." for state and federal double jeopardy]; *Curry v. Superior Court* (1970) 2 Cal.3d 707, 712 [87 Cal.Rptr. 361, 470 P.2d 345] (*Curry*).)[7]

Accordingly, the second trial court correctly concluded it was bound to overrule the pleas of former jeopardy, and deny the dismissal and new trial

---

[7] There may be a distinction between swearing the jury proper and swearing the alternates. (See *Griffin, supra*, 33 Cal.4th at pp. 565–566; *Mendes, supra*, 23 Cal.3d at pp. 852–856; cf. *People v. Cottle* (2006) 39 Cal.4th 246, 254–258 [46 Cal.Rptr.3d 86, 138 P.3d 230]; *DeFrance, supra*, 167 Cal.App.4th at p. 503.) Not surprisingly, the parties express differing views on that point. As resolution of this issue is not necessary to our decision in this case, we need not and do not address it.

motions to the extent they were based solely on double jeopardy claims. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] (*Auto Equity Sales*).)

■ Defendants invite us to "fix jeopardy at the point where the jurors are indeed chosen, viewing the oath as an administrative technicality that has no bearing on the question of jeopardy, except, perhaps, where good cause [to delay swearing the jury] has actually been established and proved." They correctly contend that California courts may invoke independent state grounds to interpret the California Constitution's double jeopardy provision more broadly than the analogous federal provision. (See, e.g., *People v. Hanson* (2000) 23 Cal.4th 355 [97 Cal.Rptr.2d 58, 1 P.3d 650]; *People v. Fields* (1996) 13 Cal.4th 289, 297–298, 302 [52 Cal.Rptr.2d 282, 914 P.2d 832] (*Fields*).)

■ However, our Supreme Court precedent fixes the point of attachment of jeopardy in a jury trial as the time when the jury *is* sworn, not the point it *should have been* sworn. (*Riggs, supra*, 44 Cal.4th at p. 278, fn. 12; *Curry, supra*, 2 Cal.3d at p. 712.) We are not free to change that rule. (See *Auto Equity Sales, supra*, 57 Cal.2d at p. 455.)

However, these conclusions about double jeopardy, in and of themselves, do not necessarily resolve defendant's *due process* claims.

### 3. *Due Process*

Defendants reimport from double jeopardy jurisprudence harms against which *that* doctrine protects, and claim that the *occurrence* of such harms deprived them of due process. First, they contend they were deprived of their right to be tried by the jury that had been selected and was ready to try the case. Second, analogizing to cases of outrageous governmental conduct and prosecutorial misconduct, they accuse the People of manipulating the proceedings to secure a second opportunity to muster evidence against them. We are not persuaded by either claim.

Before addressing the specifics of these two defense claims, we outline some of the purposes served by the double jeopardy rule. Our Supreme Court has stated: "It prevents the state from having a second opportunity to marshal evidence which it failed to produce at the first opportunity. It reduces the risk that, by effectively lessening the People's burden of proof, an innocent person might be convicted. It protects an accused from the embarrassment, expense and ordeal of a second trial." (*Mendes, supra*, 23 Cal.3d at p. 855.)

The rule also ensures "that the defendant's right to have his fate decided by the first jury empaneled is protected." (*Weston v. Kernan* (9th Cir. 1995) 50 F.3d 633, 636 (*Weston*).)[8]

We now address defendants' due process claims separately.

### a. *Right to a Particular Jury*

 Precedent holds that the right to be tried by the particular jury that has been selected is protected by double jeopardy principles. (See *Crist, supra,* 437 U.S. at p. 36 [57 L.Ed.2d at pp. 31–32] [referring to the "strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict"]; *Downum, supra,* 372 U.S. at p. 736 [10 L.Ed.2d at p. 102] [referring to the "valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him" but explaining such right "may be subordinated to the public interest—when there is an imperious necessity to do so"]; but see *Arizona v. Washington* (1978) 434 U.S. 497, 505 & fn. 16 [54 L.Ed.2d 717, 98 S.Ct. 824] ["a rigid application of the 'particular tribunal' principle is unacceptable . . ." and departing from the ideal does "not invariably create unfairness"].)

However, in these and similar cases, the courts were referring to juries that had been selected *and sworn* and did not suggest the "particular jury" interest extends any further.

For example, our Supreme Court has held that "a criminal defendant *who is in the midst of trial* has an interest . . . in having his or her case resolved by *the jury that was initially sworn to hear the case*—and in potentially obtaining an acquittal from that jury. [Citation.] [Fn. omitted.] It also follows that in certain circumstances, conduct by the prosecution or the court that results in mistrial, thereby terminating the trial prior to resolution by the jury, may impair that aspect of a defendant's protected 'double jeopardy' interest." (*Batts, supra,* 30 Cal.4th at p. 679, italics added.) And, when addressing cases discussing the " 'particular tribunal' or 'chosen jury' " issue, the high court observed "these cases do no more than determine that jeopardy attaches once a jury and alternates are chosen [citation], and that granting an unnecessary mistrial bars retrial [citation]. They do not stand for the proposition that defendant becomes immune from further prosecution merely because one particular juror is improperly discharged, an alternate substituted, and an actual verdict duly entered." (*People v. Hernandez* (2003) 30 Cal.4th 1, 8 [131 Cal.Rptr.2d 514, 64 P.3d 800] (*Hernandez*).)

---

[8] Other purposes served by the doctrine have been mentioned, but are not relevant to this appeal. (See, e.g., *Fields, supra,* 13 Cal.4th at pp. 298–299; *Weston, supra,* 50 F.3d at p. 636.)

Here, defendants were not in the "midst of trial" because they were never placed in jeopardy. Nor do they claim there was anything relatively favorable to them about the first jury, or relatively unfavorable to them about the second juries.[9] Instead, defendants claim that, having completed jury selection, they had the abstract right to have *that jury* and no other decide their fate, based on then extant evidence.

However, precedent holds that the right to a "particular" jury applies when and only when a jury has been sworn, and jeopardy has actually attached. (See *Hernandez, supra*, 30 Cal.4th at p. 8; *Batts, supra*, 30 Cal.4th at p. 679.) We are not free to expand that rule. (See *Auto Equity Sales, supra*, 57 Cal.2d at p. 455.) Accordingly, we must reject the claim that defendants had a due process right to have the first jury decide their fate, before jeopardy had actually attached.

### b. *Governmental Misconduct*

We agree with defendants that the People improperly announced "ready" before commencing jury selection, without knowing whether their key witnesses were available, instead of seeking a continuance. (See fn. 3, *ante*.) However, this impropriety does not show intentional manipulation of the proceedings, as opposed to ignorance or neglect. Further, any error was not structural, and defendants fail to show any prejudice flowing from the dismissal and refiling of the charges.

The "extreme" double jeopardy cases are those "in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence. Although there was a time when English judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, [fn. omitted] the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this 'abhorrent' practice." (*Arizona v. Washington, supra*, 434 U.S. at pp. 507–508 [54 L.Ed.2d at p. 729].)

Here, the People dismissed the first case *before* jeopardy attached. A prosecutorial dismissal, "if entered before jeopardy attaches, neither operates as an acquittal nor prevents further prosecution of the offense." (*Bucolo v. Adkins* (1976) 424 U.S. 641, 642 [47 L.Ed.2d 301, 303, 96 S.Ct. 1086]; see 1 Torcia, Wharton's Criminal Law (15th ed. 1993) Defenses, § 61, pp. 455–456.)

One learned treatise would add a caveat to this rule: "Although jeopardy attaches in a jury trial only after jury selection is complete and the judge has

---

[9] The jury trial ultimately was conducted with two juries, one for Presley and one for the Whitakers, for reasons irrelevant to this discussion.

sworn the entire jury . . . pre-jeopardy attempts to terminate the trial and start over may deny a defendant due process *in egregious circumstances*." (6 LaFave et al., Criminal Procedure (3d ed. 2007) Double Jeopardy, § 25.1(d), p. 588, italics added.) And a commentator suggests that the rule that jeopardy attaches when jury is sworn or first witness in court trial testifies "overlooks the very real possibility that successive indictments, though dismissed before trial, may be used as instruments of oppression and may be nearly as vexatious to the defendant as a series of trials." (Comment, *Twice in Jeopardy* (1965) 75 Yale L.J. 262, 263, fn. 3.) Accordingly, we shall assume but do not hold that prosecution after a prejeopardy dismissal might be barred in "egregious circumstances."

■ By analogy, defendants refer to cases that address the doctrine of "outrageous" government conduct, flowing from due process fairness grounds. (See *People v. Smith* (2003) 31 Cal.4th 1207, 1223–1227 [7 Cal.Rptr.3d 559, 80 P.3d 662] [declining to decide viability of doctrine]; *People v. Wesley* (1990) 224 Cal.App.3d 1130, 1142 [274 Cal.Rptr. 326] [California has "come very close" to applying the doctrine]; *People v. Peppars* (1983) 140 Cal.App.3d 677, 685–687 [189 Cal.Rptr. 879]; see generally 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, § 102, pp. 442–444 (Witkin & Epstein) [describing the muddled case law].) *If viable*, the doctrine is short in reach: "When conduct on the part of the authorities is so outrageous as to interfere with an accused's right of due process of law, proceedings against the accused are thereby rendered improper. [Citations.] Dismissal is, on occasion, used by courts to discourage *flagrant and shocking misconduct by overzealous governmental officials* in subsequent cases." (*Boulas v. Superior Court* (1986) 188 Cal.App.3d 422, 429 [233 Cal.Rptr. 487], italics added.)

Nothing the People did in this case reflects "flagrant and shocking misconduct." The fact their efforts to find key witnesses were found by the first trial court to fall short of satisfying the diligence required under Evidence Code sections 240 and 1291 does not mean the People acted with an *improper motive*.

Further, as defendants concede, had the first trial court declined to delay swearing the jury until the conclusion of the People's evidentiary motion, the People could have immediately moved to dismiss their case against defendants, and refiled it if and when they were able to secure their witnesses. Defendants turn this point around and argue: "Thus, the People made a tactical choice and engaged in gamesmanship from the beginning: they took a risk, and bluffed, and lost." But this does not change the fact that it was within the People's power to move to dismiss *before* jury selection. The fact that the People participated in jury selection while their evidentiary motion was pending does not reflect flagrant or shocking misconduct.

The defense analogy to cases where a prosecutor *provokes a mistrial* fares no better, because the remedy in such cases is a subsequent fair trial, not dismissal of the charges.

Two mistrial rules apply in California. The first, compelled by federal precedent, provides that, "If a motion for mistrial is granted on the basis of prosecutorial misconduct, the Double Jeopardy Clause does not preclude a retrial unless the prosecutor intentionally provoked the mistrial." (1 Witkin & Epstein, *supra*, Defenses, § 127, p. 474; see *Oregon v. Kennedy* (1982) 456 U.S. 667 [72 L.Ed.2d 416, 102 S.Ct. 2083].) The second, based on independent state grounds, bars a retrial if a prosecutor commits misconduct to thwart a looming acquittal, "if a court, reviewing all of the circumstances as of the time of the misconduct, finds not only that the prosecution believed that an acquittal was likely and committed misconduct for the purpose of thwarting such an acquittal, but also determines, from an objective perspective, that the prosecutorial misconduct deprived the defendant of a reasonable prospect of an acquittal." (*Batts, supra*, 30 Cal.4th at pp. 665–666; see *id.*, at pp. 695–697.)

But *Batts* emphasized that "the normal and usually sufficient remedy for the vast majority of instances of prejudicial prosecutorial misconduct that occur at trial is provided under the federal and state *due process* clause, and calls for either a declaration of mistrial followed by retrial, or a reversal of a defendant's conviction on appeal followed by retrial. The remedy mandated by the double jeopardy clause—an order barring retrial and leading to the dismissal of the criminal charges against the defendant without trial—is an unusual and extraordinary measure that properly should be invoked only with great caution." (*Batts, supra*, 30 Cal.4th at p. 666; see *Sons v. Superior Court* (2004) 125 Cal.App.4th 110, 121 [22 Cal.Rptr.3d 647] (*Sons*) ["misconduct, even flagrant misconduct, ordinarily is corrected by a fair retrial"].)

Nor have defendants established that this is a case calling for per se reversal. In cases of federal constitutional error (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]), per se reversal is reserved for "structural" flaws, such as "the total deprivation of the right to counsel at trial, a biased judge, unlawful exclusion of members of the defendant's race from a grand jury, denial of the right to self-representation at trial, and denial of the right to a public trial." (*People v. Flood* (1998) 18 Cal.4th 470, 493 [76 Cal.Rptr.2d 180, 957 P.2d 869]; see *People v. Aranda* (2012) 55 Cal.4th 342, 363–365 [145 Cal.Rptr.3d 855, 283 P.3d 632].) "If, on the other hand, ' "the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." ' " (*People v. Mil* (2012) 53 Cal.4th 400, 410 [135 Cal.Rptr.3d 339, 266 P.3d 1030].)

But in this case, the assumed error in failing to promptly swear the first jury is based on the *state law procedural rule* that a jury should be sworn promptly after selection. (See pt. IB1, *ante*.) It was not federal constitutional error.

Thus, defendants must show actual prejudice, which they fail to do. Apart from the contentions raised and resolved adversely to them in the unpublished portion of this opinion (pt. II, *post*), and the double jeopardy claims we have already rejected, defendants do not contend the second trial was unfair.

We acknowledge that defendants had to undergo two preliminary hearings. But each defendant had appointed counsel for both cases and they do not claim they suffered any increased financial costs because of the dismissal and refiling of charges.[10] Further, there is no claim that they failed to receive full presentence custody credits for any additional jail time as a result of any delay.

Finally, in arguing for reversal, defendants also analogize to statutory speedy trial cases. But in such cases, even where the People have failed to act with diligence, an error in finding good cause is reversible *if and only if the defendant shows a miscarriage of justice at the ensuing trial. (People v. Martinez* (2000) 22 Cal.4th 750, 769 [94 Cal.Rptr.2d 381, 996 P.2d 32]; *People v. Rodriguez* (1971) 15 Cal.App.3d 481, 484–485 [93 Cal.Rptr. 182]; cf. *Perryman, supra*, 141 Cal.App.4th 767 [*pretrial* writ relief].)

Thus, the second jury trial cured any harm caused by the People's impropriety in announcing "ready" when they were not ready, or by any error in the first trial court's delaying swearing the jury for reasons extrinsic to jury selection. (See *Batts, supra*, 30 Cal.4th at p. 666; *Sons, supra*, 125 Cal.App.4th at p. 121.)

### c. *Conclusion*

 Even assuming the first trial court erred in delaying swearing the jury, the result was neither a double jeopardy violation nor a due process violation. And even if we were to find the People engaged in some form of misconduct, no structural error occurred and defendants have not shown that any prejudice flowed from any misconduct. Therefore, there is no basis to reverse defendants' convictions that followed their jury trial.

---

[10] Defendants each retained counsel after the jury verdicts, and before sentencing. But defendants do not claim they suffered any additional financial costs because of the dismissal of the first case itself.

## II

*Defendants' Remaining Contentions*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgments are affirmed. The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation certified copies of the corrected abstracts of judgment.

Blease, Acting P. J., and Hull, J., concurred.

A petition for a rehearing was denied March 12, 2013, and appellants' petitions for review by the Supreme Court were denied May 22, 2013, S209351.

---

[*]See footnote, *ante*, page 999.